Chambers, Appellant, *v.* Chambers.

Argued November 27, 1961. Before Bell, C. J., Jones, Cohen, Eagen and Alpern, JJ.

Bernard J. Korman, with him Frederick Cohen, and Gold and Bowman, for appellant.

Leon S. Rosenthal, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 2, 1962:

This is an appeal from a final decree of the Court of Common Pleas No. 1 of Philadelphia County which dismissed appellant-husband's complaint in equity which sought the reconveyance of certain realty held by the appellee-wife. The chancellor, after hearing, held that there was a presumptive gift of the premises by appellant to the appellee which had not been rebutted and that the evidence was insufficient to establish a trust. Appellant's exceptions to the decree nisi were dismissed by the court en banc, and this appeal was taken from the final decree.

The facts (which are not seriously disputed) reveal that appellant, Wade Chambers, and appellee, Minnie M. Chambers, participated in a marriage ceremony pursuant to the issuance of a proper marriage license in November, 1944. The parties, however, were never legally married because a previous marriage of appellee to one Sidney Mills in 1925 has never been dissolved or terminated by divorce and the said Sidney Mills is presently residing somewhere in Georgia. It is not clear when the parties learned of the impediment to their marriage but it is clear that both parties were under the impression that they were in fact husband

and wife throughout the time periods herein pertinent.[1]

Approximately two years after the marriage ceremony, in June 1946 the parties purchased the realty presently involved, located at 4940 Aspen Street, Philadelphia, and title was taken in their respective names as "husband and wife". The purchase price of $4,000 was arranged by a $1,100 cash payment[2] and a $3,200 mortgage in the names of both parties. The parties thereafter resided together in the premises without incident or difficulty until 1950.

On or about July of 1950, the appellant contemplated purchasing a used automobile of a friend which had just been traded in on a newer model. This friend's father informed appellant that, if he transferred the premises over to appellee placing title in her name, then, in the event that appellant missed a finance payment on the car, his creditors could not proceed against the real estate. Thereafter, on July 31, 1950, the parties executed a conveyance of the premises to appellee alone. The parties stipulated, and the chancellor so found, that the purpose of this conveyance was to protect the real estate from any execution which might result upon a default upon the financing of the purchase of the automobile, and that the conveyance was made without consideration. The subsequent purchase and financing never materialized because the appellee refused "to sign for [the automobile]".

The record further discloses that the parties resided together on the premises until March of 1955 at which

---

[1] The record reveals that Sidney Mills instituted some form of action against appellee during their marriage, which action appellee evidently considered or assumed, erroneously, to be a divorce action.

[2] While the record is not clear in this respect, it appears that appellant contributed $300 of this cash payment and the remainder appellee contributed. While the actual consideration was $4,000 apparently there were involved other expenses which necessitated raising $4,300.

time appellant suffered a nervous breakdown and was admitted to the Philadelphia General Hospital, where he remained for a few weeks. Upon discharge, appellant returned to work but, suffering a relapse, he was confined in the Philadelphia State Hospital until late in 1956. In December of 1956, appellant was readmitted and remained at the Philadelphia State Hospital until March 23, 1957. On August 17, 1957, appellant left the premises, moved to Halifax, Virginia.

In regard to the cost of maintenance of the premises and other obligations of the parties, the record discloses that from 1946 to 1954 these obligations were paid from contributions of both parties pooled or placed in a common fund. While far from clear on the record, appellee testified that appellant contributed sums from $3 to $30 a week to such common fund. The parties also secured numerous loans to assist them in the upkeep of the premises and payment of their personal obligations. It is a fact that, from 1954 until date of the hearing of the instant case, appellant has not contributed to the maintenance of the property and that all necessary payments have been made by appellee out of her own funds.

The court below held that the conveyance of the premises was presumptively a gift to appellee and that appellant had failed to rebut or overcome this presumption with the requisite evidentiary proof. While it is true that ordinarily a factual presumption arises that a gift was intended where a husband purchases or transfers property in the name of his wife (*Lapayowker v. Lincoln College Preparatory School*, 386 Pa. 167, 125 A. 2d 451; *Katz v. Katz*, 309 Pa. 115, 163 A. 214; *Gassner v. Gassner*, 280 Pa. 313, 124 A. 483), yet such a presumption does not arise where, as in the case at bar, the *undisputed* facts relating to the purpose of the conveyance clearly negate any presumption of a gift. Nor do we believe, unlike the court en banc, that the

fact that appellant did nothing until 1958 to secure a reconveyance, that appellant has contributed nothing to the maintenance or upkeep of the premises since 1954, or that appellee, reputedly, made certain statements, constitute a ratification or confirmation of the conveyance as a gift inter vivos to appellee. None of these facts or circumstances reveals or demonstrates a sufficient donative intent on appellant's part.

Furthermore, in the instant case, in the absence of any allegation or proof of fraud in obtaining the title or proof that the property was purchased by appellant with his own funds, appellant has not established the existence of a resulting trust. *Gray v. Leibert,* 357 Pa. 130, 136, 53 A. 2d 132; *Moyer v. Moyer,* 356 Pa. 184, 187, 51 A. 2d 708; *Watkins & Miller v. Watkins,* 101 Pa. Superior Ct. 426, 428. As a matter of fact, the record is devoid of any evidence of an understanding or agreement that appellee was to hold the premises in trust. Cf: *Godzieba v. Godzieba,* 393 Pa. 544, 143 A. 2d 344; *Zahorsky v. Leschinsky,* 394 Pa. 368, 147 A. 2d 362.

The real issue on this appeal is whether, under the facts and circumstances, a constructive trust should be imposed.

" '. . . a constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.' " *Gray v. Leibert,* supra, 357 Pa. 130, 135, 53 A. 2d 132. Such a trust may arise where there is a breach of a confidential relationship by the transferee, or it may arise out of circumstances evidencing fraud, duress, undue influence or mistake. Restatement (2d), Trusts, §§44(a), 44(b).

Justice (then Judge) CARDOZO best described the use and purpose of a constructive trust in *Beatty v. Guggenheim Exploration Co.,* 225 N. Y. 380, 122 N.E.

378, 380-381, wherein he stated: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee . . . . A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief."

The present record unequivocally demonstrates that, when the parties executed the transfer in July of 1950, without consideration, to appellee alone, they did so to protect the premises from the possibility of lien creditors issuing execution thereon as a result of a default in a contemplated automobile financing arrangement. It is also manifest that this conveyance was prompted by faulty advice in that, since appellee was evidently to join in the purchase, the premises would have been subject to execution for any default. We think it clear beyond doubt that this conveyance was not executed with any intent to divest appellant of his beneficial interest in the premises but only to place legal title in appellant's name as a protective device securing both their interest. This may also be inferred from the fact that appellant contributed to the upkeep or maintenance of the premises from the time of the conveyance until his hospitalization in 1955. It is also noted that appellee has never asserted any absolute ownership in the premises. Indeed, she testified that she would have reconveyed the premises had appellant asked her shortly after the conveyance. Her reason for refusing to do so now is premised not on any claim of ownership but merely because she had bills to be paid and she has been living alone in the house for the last two years. This being the intent of the parties and in view of the fact that they are not husband and wife, as was the impression when the conveyance was made, it would be unjust

to permit appellee to retain the appellant's beneficial and legal interest in the premises which, under the facts, would be an undivided one-half interest.[3]

In reaching our conclusion that appellee holds as trustee, we have not disregarded the settled rule that the chancellor's findings of fact, approved by the court en banc, have the effect of a jury's verdict. Indeed, it is equally well settled that a chancellor's conclusions, whether of law or ultimate fact, are no more than his reasoning from the underlying facts and are reviewable, especially where the underlying facts themselves are not in esse but are matters of inference and deduction: *Sechler v. Sechler*, 403 Pa. 1, 4, 5, 169 A. 2d 78; *Commonwealth Trust Co. v. Szabo*, 391 Pa. 272, 276, 277, 138 A. 2d 85. In the instant case we do not disturb the findings of facts but merely the conclusions deduced therefrom.

The chancellor also erred in his conclusions that appellant was barred by laches. The record reveals that the parties resided together on the premises as husband and wife from 1946 to 1957. It is well settled that equity does not impute laches to one in peaceful possession, as in the instant case. *Allardice v. McCain*, 375 Pa. 528, 537, 101 A. 2d 385; *Christy v. Christy*, 353 Pa. 476, 480, 46 A. 2d 169.

One further factor must be given consideration in the instant case. The record reveals that appellee from 1954 to the present has made numerous expenditures, from her own funds, for both the maintenance and improvement of the premises and in payment of appellant's obligations. Under such circumstances, justice requires that appellant reimburse appellee for the expenditures made by her to maintain and improve the

---

[3] The chancellor correctly concluded that, in view of the fact that the parties were not husband and wife, at the time of the conveyance they held the property as joint tenants with right of survivorship. *Maxwell v. Saylor*, 359 Pa. 94, 96, 58 A. 2d 355; *Teacher v. Kijurina*, 365 Pa. 480, 487, 76 A. 2d 197.

premises, as well as one-half the excess of value added to the property by reason of the improvements thereof, as well as any expenditures paid by her to satisfy the personal obligations of the parties. Cf: *Godzieba v. Godzieba,* supra, 393 Pa. 544, 551, 143 A. 2d 344.

Any order directing a reconveyance of a one-half interest in the premises to appellant should be made conditional upon payment within a reasonable time of the amount determined to be due appellee as a result of her expenditures.

The record is remanded to the court below for action not inconsistent with this opinion and for a determination of the amount which appellant must pay appellee before enforcement of the constructive trust can be secured.

Decree reversed and record remanded.