**Snyder v. First National Bank of Pen Argyl**

*Robert Ungerleider,* for plaintiff.

*Ronald W. Shipman,* of Coffin, DeRaymond & Shipman, for defendants.

WILLIAMS, J., January 8, 1973.—We have for disposition plaintiff's complaint in equity seeking an injunction to compel payment to him rather than to the defendant receiver of certain funds held by First National Bank of Pen Argyl.

The complaint was filed on January 3, 1972, and on the same date a rule was granted upon defendants to show cause why a preliminary injunction should not issue. At a hearing held February 14, 1972, counsel agreed that the First National Bank of Pen Argyl was a mere dispository of the funds with no other interest and, by stipulation, an order was entered permitting the bank to disburse $6,258.20 to the receiver to be held in a separate account pending determination of this action.

A hearing was held on May 16, 1972, and, after subsequent negotiations between the parties failed, the matter was placed on the argument list. Although no answer has been filed to the complaint, there is little dispute as to the relevant facts.

## FINDINGS OF FACT

1. Plaintiff, J. D. Snyder, is an individual and resides in Easton, Pa.

2. Defendant, First National Bank of Pen Argyl, is a banking corporation organized under the laws of the United States with its principal office located in Pen Argyl, Northampton County, Pa.

3. Defendant, Martin D. Cohen, Esquire, is an individual with offices in Easton, Northampton County, Pa., and has been appointed receiver for Traverse Ltd., a corporation with its principal office located in Nazareth, Northampton County, Pa.

4. Plaintiff is a shareholder and member of the board of directors of a wholesale travel company, Traverse Ltd.

5. Traverse Ltd. was in the business of booking group passage to Africa and followed the procedure of booking a certain number of seats with a scheduled charter flight, paying for these seats in advance on a per person basis. When such a trip returned, the carrier would refund to Traverse Ltd. the difference between the individual and charter group rates.

6. On August 23, 1971, to meet the deposit requirements of a group tour to Africa via Air India Airlines, the board of directors of Traverse authorized its president to borrow $5,000. The president indicated to the directors that the refund from Air India would be made immediately.

7. As an accommodation to Traverse, plaintiff agreed to loan to the corporation the $5,000 necessary to complete the deposit.

8. On September 21, 1971, plaintiff borrowed $5,000 from Second National Bank of Nazareth upon a demand note bearing interest at six percent per annum.

9. Plaintiff endorsed the cashier's check representing the proceeds of said loan to Traverse and said funds were deposited in the corporation's account and were used to pay the deposit to Air India.

10. It was understood by plaintiff and Traverse that plaintiff was to receive no profit from the loan but was merely to be repaid upon receipt of the refund from Air India.

11. The refund from this charter arrived in the United States in October, 1971, but was transferred back to England due to international banking problems.

12. The refund amounted to $6,258.20 and was credited by Fidelity Bank of Philadelphia to the account of the First National Bank of Pen Argyl and

then to the credit of Traverse Ltd. on December 21, 1971.

13. On December 23, 1971, Martin Cohen, Esquire, was appointed receiver for Traverse Ltd. in an involuntary State proceeding.

14. The refund from Air India has been maintained in a separate account by the receiver and has not been commingled with other assets of Traverse Ltd.

15. Plaintiff has filed a claim for $5,000 in the receivership proceedings which has not been disputed.

## DISCUSSION

It is plaintiff's position that the receiver holds the disputed $5,000 upon a constructive trust in favor of plaintiff. To determine the position of the receiver with regard to the sum in question it is necessary to determine his relation to Traverse Ltd. It is stated in 31 P. L. Encyc. 158 §10:

"The property in the possession of a receiver is in custodia legis, and the receiver's possession is the possession of the court for the benefit of those ultimately entitled.

" . . .

"A receiver of the owner of property stands in such owner's shoes, and *acquires only the rights possessed by him.* Thus, a receiver possesses no rights with respect to property superior to those which would be possessed by the one for whom he was appointed were the latter acting for himself." (Italics supplied.)

In order to prevail, therefore, plaintiff must establish the existence of a constructive trust against Traverse prior to the appointment of the receiver. If he can do so, he is entitled to present payment of the proceeds: Restatement, Restitution, §160, comment (f).

A constructive trust arises "[W]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it": Restatement, Restitution, §160. Such a trust may arise where there is a breach of a confidential relationship by the transferee or it may arise out of circumstances evidencing fraud, duress, undue influence or mistake. Ibid, §§163, 166; Chambers v. Chambers, 406 Pa. 50; Restatement 2d, Trusts, §44(a), (b).

In the present case there are neither allegations nor evidence of any wrongdoing which would give rise to a constructive trust. Plaintiff argues, nevertheless, that all that is required to construct a trust is unjust enrichment on the theory that unless he prevails the corporation and its general creditors will receive a windfall and will be unjustly enriched. In doing so he relies upon Dubin Paper Company v. Insurance Co. of North America, 361 Pa. 68, which is a leading authority for the doctrine of equitable conversion. There the insured under a fire insurance policy entered into an agreement of sale for real estate. After execution of the agreement and prior to settlement, a fire loss occurred. The court's determination that, as between the seller and the buyer, the former held the fire insurance proceeds upon a constructive trust is based upon the ancient common law doctrine that execution of an agreement of sale transfers equitable title to the buyer. In the present case we are unable to discern any equitable conversion in plaintiff's dealings with Traverse which could give rise to *unjust* enrichment of the corporation.

Plaintiff has adequately traced his loan to Traverse and the subsequent refund from Air India; however, it is clear that the refund, which exceeded plaintiff's loan of $5,000, was not a specific fund set aside or

collected for plaintiff's account but was an asset of Traverse: Philadelphia v. Mancini, 431 Pa. 355, 360.

The determination of whether a debt or a trust is created depends upon the manifested intention of the parties. Comment (g) to Restatement 2d, Trusts, §12, states: "If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created." The mere tracing of a debt to a particular source of repayment does not give rise to a constructive trust.

The issue of whether the debt to plaintiff is a preferred debt is not before us; it is properly a part of the receivership proceeding and we render no opinion concerning that question.

## CONCLUSIONS OF LAW

1. The parties are properly before the court, and the court has jurisdiction of the subject matter.

2. Plaintiff and defendant are in the relationship of debtor and creditor.

3. Defendant does not hold the refund from Air India upon a constructive trust in favor of plaintiff.

## DECREE NISI

And now, this January 8, 1973, after hearing and upon consideration of all the evidence and in accordance with the foregoing opinion, plaintiff's complaint in equity is dismissed.

If, in accordance with Pennsylvania Rule of Civil Procedure 1519, no exceptions are filed within 20 days, this decree nisi shall be entered by the prothonotary on praecipe as the final decree.