## Archibald v. General Construction Associates, Inc.

Arsen Kashkashian, Jr., for plaintiff.
John A. Van Luvanee, for defendants.

GARB, J., July 28, 1978—This is an action in equity in which plaintiffs are various purchasers and owners of properties with newly constructed homes thereon located and situate in a development known as "Wynnewood V," Yardley, Bucks County, Pa. Defendant General Construction Associates, Inc. (Associates) is the developer and general contractor of the development known as

"Wynnewood V" and defendant Yardley Land Company (Yardley) is the owner of the real estate upon which the said development is being constructed. The complaint is in two counts, the first of which requests specific performance and the second, the imposition of a constructive trust. Defendants have filed preliminary objections as in the nature of a demurrer to each count, a request for certification to the law side of the court based upon the assertion of a complete and adequate non-statutory remedy at law, a motion to strike for failure to conform to rules of court and for the pleading of scandalous and impertinent matter. The preliminary objections have been praeciped before the undersigned for disposition under and pursuant to Bucks County Rule of Civil Procedure *266. We determine herein that the assertion of a full, complete and adequate non-statutory remedy at law is well founded and therefore will certify this matter to the law side of the court.

As previously noted count one of the complaint seeks an order of specific performance. We are satisfied that, based upon the facts alleged in the complaint, an order of specific performance would be inappropriate because there is in fact a full, adequate and complete non-statutory remedy at law.

In addition to the identification of the parties as previously noted, the first count of the complaint alleges that plaintiffs, as a result of various agreements of sale entered into by them with Associates, made settlement on the properties with newly constructed homes thereon located at the various addresses set forth in the introductory paragraphs of the complaint. It is alleged in the complaint that at the time of the various settle-

ments the homes under construction were in various stages of completion, all of which required additional labor and materials to be supplied in order to conform to the specifications of the agreements of sale. Notwithstanding the foregoing, it is alleged that Associates scheduled settlement for the aforesaid properties with the knowledge that settlement had previously been extended at the request of Associates and with the knowledge that the individual plaintiffs were under severe financial pressure to initiate their residence in the homes purchased. It is alleged that at the time of settlement defendant Associates through its authorized agents represented that the labor and materials needed to complete construction would be provided after settlement and within 30 to 60 days thereof and further that the labor and materials required for the completion of each particular property was documented by a "punch list," "escrow agreement" or both, the specifics of which are annexed to the complaint as exhibits thereto. It is alleged that the foregoing representations were made with the knowledge that they were false and untrue and that neither of the defendants ever intended to supply all of the labor and materials agreed upon. Further it is alleged that the foregoing representations were made with the intent to deceive and defraud plaintiffs and in order to induce plaintiffs to complete settlement and pay the entirety of the contract price. In reliance upon the representations it is alleged that plaintiffs did complete settlement. It is further alleged that defendants intentionally and wilfully breached the foregoing oral and written agreements having to do with completion after settlement and as a result of all of the foregoing specific performance of these contracts is requested.

As we have previously indicated we are satisfied that an order of specific performance would be inappropriate. We are satisfied that plaintiffs, based entirely upon the assertions of their own complaint, have a full, complete and adequate non-statutory remedy at law.

Obviously only in a case where it is appropriate should a decree of specific performance of a contract be entered: Klemow v. Time Incorporated, 466 Pa. 189, 352 A. 2d 12 (1976). It is well settled that a decree of specific performance will not be granted unless plaintiff is clearly entitled thereto and no adequate remedy at law exists: Portnoy v. Brown, 430 Pa. 401, 243 A. 2d 444 (1968). Specific performance of a contract by a court of equity is a matter of grace and not of right and will not be granted when there is an adequate remedy at law: Roth v. Hartl, 365 Pa. 428, 75 A. 2d 583 (1950); and Mrahunec v. Fausti, 385 Pa. 64, 121 A. 2d 878 (1956).

The cases in Pennsylvania having to do with enforcement of building contracts have been virtually unanimous in holding that a decree of specific performance should not be entered. In Weiss v. Cohen, 4 Chester 94 (1948), it was held that as respects contracts in regard to real estate, although subject to exceptions, the general rule is well settled that contracts for building or construction or repair will not be enforced specifically. A contract to make or remove a building will not be specifically enforced under the general rule. The court recognized that there are two general classes of exceptions neither of which are in the nature of the case presently before us.

In Anthony v. Redditt, 40 Del. Co. 242 (1953), the

court denied a decree of specific performance of a construction contract in reliance upon Williston on Contracts and §371 of the Restatement of Contracts. Therein the court held that the court will not enforce specific performance of a building contract, for one thing, because of the difficulty of enforcing a decree without an expenditure of effort by the court disproportionate to the value of the result. In citing section 371 of the Restatement of Contracts the court states that specific performance will not be decreed if performance is of such a character to make effective enforcement unreasonably difficult or to require such long continued supervision by the court as is disproportionate to the advantages to be gained from such a decree and the harm to be suffered in case it is denied. Furthermore, the court observed that in terms of the construction of the dwelling house there involved, plaintiff could have it constructed and if the costs were higher than that for which he contracted with defendant, he could recover his damages in action at law.

The court in Athens Restaurant v. Steinman, 103 Pitts. L.J. 331 (1950), entered a similar holding for similar reasons. The court therein held that equity will not, except under unusual circumstances, compel a party to construct a building because of the impracticality of the court in supervising such a building operation and because there is an adequate remedy of the law. Once again the court relied to some extent upon section 371 of the Restatement of Contracts.

In Fisher v. Melvin C. Long, Inc., 8 Chester 297 (1958), the court denied a decree of specific performance for reconstruction of a portion of a home

constructed by defendant builder where the master bedroom failed to conform to the original specifications. It was held therein that damages at law would adequately compensate plaintiff for the breach of the contract and the construction of the master bedroom and therefore that a decree of specific performance would be inappropriate. The foregoing decree nisi was made absolute by the opinion in Fisher v.Melvin C. Long, Inc., 9 Chester 11 (1959), in holding as follows: "We believe the basis of this rule to be that the injury for failure to construct a building in accordance with the usual or ordinary contract provisions may adequately be compensated in money damages easily and readily determined."

Finally the foregoing rubric was once again confirmed in Emmaus Borough v. Wilmer R. Schultz, Inc., 50 D. & C. 2d 755, 34 Lehigh 92 (1970). Furthermore, in this case the court likewise disposed of the contention of plaintiffs there, similar to that here, that a decree of specific performance in equity would avoid the multiplicity of suits on the law side of the court. The court there observed, and we might in the case at bar, that even on the law side all of these cases could be consolidated for trial and in any event, it is defendants who have the complaint of the multiplicity of suits and they are not, at this time, so complaining.

We are in accord with the foregoing authority. The complaint itself sets forth just how clear and adequate the remedy at law is. The exhibits show with specificity the alleged deficiencies in each property and in most cases show the cost of completion or repair. Nothing can more clearly illustrate or document the adequacy of the remedy at law.

Count two of the complaint constitutes a request for the imposition of a constructive trust. The facts alleged in this count in support of that demand for relief are that "Wynnewood V" is a development of newly constructed homes presently consisting of 17 properties and homes. Thirteen of the said properties and homes have been sold while four are still owned by defendants designated as lots 9, 11, 12 and 16 of section 1. It is alleged that defendants have experienced difficulties in maintaining their financial obligations as to the construction financing and land acquisition costs of the aforesaid properties and have acquired excess funds from plaintiffs through the aforesaid breach of the oral and written agreements between plaintiffs and defendants because of the fact that defendants have not incurred the additional costs for the labor and materials needed to complete the homes of plaintiffs. Therefore, it is alleged that as a result of the aforesaid breach of the oral and written agreements excess funds generated therefrom are the rightful property of plaintiffs but are retained by defendants. It is alleged that defendants have utilized the aforesaid funds to meet their financial obligations as to the four properties retained by them and to preserve their ownership interests in them. Based upon the foregoing a demand for the imposition of a constructive trust over the aforesaid four properties is made.

In actuality and in contemplation of the law a constructive trust is not really a trust at all but rather an equitable remedy: Buchanan v. Brentwood Federal Savings & Loan Association, 457 Pa. 135, 320 A. 2d 117 (1974). A so-called constructive trust is merely the formula through which

the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interests therein, equity converts him into a trustee: Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378 (1919). See also Truver v. Kennedy, 425 Pa. 294, 229 A. 2d 468 (1967), and Chambers v. Chambers, 406 Pa. 50, 176 A. 2d 673 (1962). Although we speak in terms of converting an individual into a trustee, that is not strictly accurate because a constructive trustee is not bound by all of the duties of a trustee of an express trust. Rather, the sole responsibility of a constructive trustee is to surrender the property to the one on whose behalf the constructive trust is raised: Pierro v. Pierro, 438 Pa. 119, 264 A. 2d 692 (1970); and Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138, 182 Atl. 376 (1936). There is no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust. The test is whether or not unjust enrichment can thereby be avoided: Stauffer v. Stauffer, 465 Pa. 558, 351 A. 2d 236 (1976).

Perhaps the prerequisites for the establishment of a constructive trust were most clearly enunciated in Pierro v. Pierro, supra. Therein it was held that a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. One necessary aspect of defendant holding title to property is that he must have acquired it in some way that created an equitable duty in favor of plaintiff. In quoting from Justice Cardozo's opinion in

Beatty v. Guggenhein Exploration Co., supra, our court in Pierro stated: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. . . ." Constructive trusts arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled to that property: Pierro v. Pierro, supra.

The mere restatement of the definition of a constructive trust when laid side by side with the allegations of count two of the complaint graphically demonstrates that the prerequisites of a constructive trust have not been pleaded in this complaint. Certainly the allegations of the complaint cannot support a determination that defendants hold these four lots in any respect as equitable trustees for plaintiffs. There is no allegation that funds secured from plaintiffs were used to acquire these properties by defendants nor is there anything from which a suggestion can be established that defendants have an equitable duty not only to hold these four properties for the benefit of plaintiffs but rather to convey them to plaintiffs. Conceivably funds improperly secured by defendants from plaintiffs have been used to maintain these properties. That contention, however, falls far short of establishing a sufficient basis upon which to construct a trust. Therefore, the preliminary objections as in the nature of a demurrer to count two will be sustained.

There are some additional matters which need to

be addressed briefly but which need not be decided explicitly in view of our determination herein. Defendants move to strike plaintiffs' demand for punitive damages in the fixed sum of $100,000. Obviously, punitive damages are unliquidated by nature and by virtue of Pennsylvania Rule of Civil Procedure 1044(b) any pleading demanding relief for unliquidated damages shall, without claiming any specific sum, set forth only whether the amount is in excess, or not, of $10,000. Obviously, in any amended complaint which is filed the mandate of this rule should be observed.

Furthermore, defendants claim by virtue of their preliminary objections that the claim for punitive damages should be stricken because punitive damages are not recoverable in an action in equity. By virtue of the fact that we will herein certify this matter to the law side of the court and direct that an amended complaint be filed, we need not dispose of this particular preliminary objection.

One final matter merits disposition herein. After the filing of this complaint in equity plaintiffs caused the matter to be listed lis pendens. Defendants have filed a motion to strike the lis pendens which we think must be granted. Lis pendens is construed to be the jurisdiction, power, or control which courts acquire over property in a suit, pending the continuance of the action, and until final judgment: McCahill v. Roberts, 421 Pa. 233, 219 A. 2d 306 (1966). The doctrine of lis pendens does not establish an actual lien on the affected property, but rather merely gives notice to third parties that any interests that may be acquired in the property pending litigation will be subject to the result of the action: McCahill v. Roberts, supra. Lis pendens is based in common law and equity jurispru-

dence rather than in statute, and is wholly subject to equitable principles: Dorsch v. Jenkins, 243 Pa. Superior Ct. 300, 365 A. 2d 861 (1976). From the foregoing, it is obvious that the doctrine of lis pendens is appropriately invoked only when a specific property is the subject matter of the suit before the court. As previously noted in this opinion, there is no specific property obviously involved in this litigation. Clearly, the four lots remaining in title to defendants, discussed above, do not constitute the direct subject matter of this suit. Therefore, the docketing of this matter lis pendens was inappropriate and the lis pendens must be stricken.

As the foregoing opinion reveals, we have determined that the preliminary objections to both count one and count two of the complaint are well founded and must be granted. We will, therefore, sustain the demurrer to count two and direct that it be dismissed. With regard to count one we will certify that matter to the law side of the court with leave to plaintiffs to file an amended complaint consistent with our opinion herein. Furthermore, we will strike the lis pendens.

## ORDER

And now, to wit, July 28, 1978, it is hereby ordered, directed and decreed that the preliminary objections to count two of the complaint as in the nature of a demurrer are sustained and said count is dismissed. With regard to count one it is hereby ordered, directed and decreed that the same be certified to the law side of the court with leave to plaintiffs to file an amended complaint consistent with the foregoing opinion. The lis pendens docketing is hereby stricken.