## Kopp v. Tubies

*Larry W. Wolf,* for plaintiff.
*Robert E. Campbell,* for defendant.

GEORGE, *J.,* April 30, 2008—This litigation commenced on August 11, 2006 when Candace L. Kopp filed complaint against George O. Tubies seeking damages and/or specific performance of an alleged contract for

the sale of real property located at 5807 Hanover Road, Conewago Township, Adams County, Pennsylvania. In addition to the cause of action based upon contract, Kopp pled causes of action for implied contract; unjust enrichment; and constructive trust. In his answer, Tubies denied the majority of the factual allegations and raised the statute of frauds as a defense. Following the close of the pleadings, Tubies moved for partial summary judgment seeking dismissal of the contract and constructive trust causes of action.[1] By order of court dated September 18, 2007, Tubies' motion for summary judgment on the breach of contract action was granted to the extent that Kopp sought specific performance for the transfer of the subject real estate. Tubies' motion for summary judgment on the basis that the statute of frauds precluded a claim for constructive trust was denied based upon the authority of *Silver v. Silver*, 421 Pa. 533, 538-39, 219 A.2d 659, 661 (1966).

On September 19, 2007, a non-jury trial was held before this judge. At the conclusion of Kopp's presentation of evidence, Tubies' request for a demurrer on the cause of action for constructive trust was granted. At the conclusion of trial, judgment was entered in favor of Kopp and against Tubies on the breach of contract action in the amount of $26,008.91. Following this court's denial of Kopp's motion for post-trial relief, timely appeal has been filed to the Superior Court. In her appeal, Kopp challenges this court's pretrial partial grant of summary

---

1. Tubies also sought a motion in limine precluding introduction of notes apparently confirmed in writing by Tubies. That motion was denied.

judgment.[2] Kopp further challenges this court's grant of a demurrer to the cause of action based upon constructive trust. Kopp also argues that this court committed error during trial in granting Tubies' objection to the introduction of an amortization schedule. Finally, Kopp raises a number of challenges to this court's calculation of damages. Before addressing the specific issues raised by Kopp, a brief summary of the factual background is in order.

Although not entirely clear in the testimony, Kopp's relationship with Tubies is derived from Tubies' relationship with Kopp's mother. Apparently, Tubies and Kopp's mother, although not formally married, have resided together in a familial relationship for approximately 17 years. At some point in the past, Kopp owned a condominium unit in Penn Township, York County, Pennsylvania. Kopp's financial circumstances, however, placed her in jeopardy of defaulting on the mortgage encumbering her condominium unit. On two separate occasions, foreclosure proceedings were commenced against her. Trial transcript, p. 42. On the earlier occasion, Kopp's mother provided Kopp with cash sufficient to avoid foreclosure. On the second occasion, the foreclosure proceedings advanced to sheriff's sale. In order to avoid sheriff's sale, Kopp entered into a sales agreement with Tubies for the sale of the condominium unit. The agreement contemplated net sale proceeds in the amount of

---

2. Kopp's concise statement of matters complained of on appeal mistakenly references this court's ruling as a grant of Tubies' motion in limine. In actuality, Tubies raised the issue through a motion for partial summary judgment.

$19,261.55 to Kopp in the form of a note. The agreement further contemplated Kopp remaining in the condominium as a tenant of Tubies for some period of time pending Tubies' resale of the condominium. Upon resale, the previously referred to note was payable to Kopp. In addition, Tubies agreed to a division of proceeds from the sale of the condominium to the extent the proceeds exceeded the price of his purchase of the property from Kopp. Although the terms of the agreement are much more specific, it is clear that the agreement was an effort to permit Kopp to retain the proceeds from her equity in the condominium which would have otherwise been lost entirely if the property had proceeded to sheriff's sale.

Tubies exercised his right to resale the condominium which subsequently sold on August 26, 2005 for the sum of $84,000. At that time, Kopp vacated the condominium as previously agreed. Kopp and Tubies entered into further oral discussions wherein a mobile home was purchased, titled in the name of Tubies, and placed on the vacant lot owned by Tubies at 5807 Hanover Road, Conewago Township, Adams County, Pennsylvania. Pursuant to their oral arrangement, Kopp moved into the mobile home and made regular monthly payments to Tubies. On October 29, 2005, a meeting occurred between Kopp and Tubies. Kopp's daughter, Amy S. Shipley, kept notes of the discussion. Once completed, the notes were signed by Tubies. It is this document which Kopp claims to be the sales agreement for the sale of the Hanover Road property from Tubies to her.

As time passed, the relationship between the parties digressed. Thereafter, Tubies began taking action to evict Kopp from the property. Kopp subsequently initiated the

subject action seeking a temporary injunction precluding her eviction and further seeking an order directing Tubies to surrender title of the Hanover Road property to her or, in the alternative, award damages in her favor.

Kopp initially challenges this court's grant of summary judgment in favor of Tubies dismissing her claim for specific performance of the alleged contract. She claims that the October 29, 2005 notes signed by Tubies evidence a writing for the sale of the subject real estate. In granting partial summary judgment, however, I ruled that the notes were insufficient to satisfy the requirements of the statute of frauds and dismissed the cause of action for specific performance.[3]

The statute of frauds provides that oral contracts for the sale of land are invalid. 33 P.S. §1. *Fannin v. Cratty,* 331 Pa. Super. 326, 331, 480 A.2d 1056, 1058 (1984). The statute of frauds will preclude a request for specific performance unless the terms of the agreement are sufficiently set forth and the property to be conveyed is sufficiently identified and described in writing. *Pierro v. Pierro,* 438 Pa. 119, 123, 264 A.2d 692, 694 (1970). It is essential that there be a definite present agreement in writing, every requisite element whereof is clearly and fully set forth therein. *Gettemy v. Homestead Association of Westmoreland,* 356 Pa. 475, 479, 52 A.2d 325, 327 (1947). Stated another way, the writing must definitely

---

3. The issues raised in paragraphs 1 and 3 of Kopp's statement of matters complained of on appeal to be the same as this court's dismissal of the cause of action for specific performance of the sale of realty was granted on the basis of a lack of compliance with the statute of frauds.

and conclusively evidence a meeting of the minds of the parties on all requisite terms of the agreement, nothing can be left to the future except actual performance. *Id.* citing *Agnew v. Southern Ave. Land Co.,* 204 Pa. 192, 53 A. 752 (1902).

As mentioned, the writing upon which Kopp bases her claim for specific performance is the two pages of notes prepared by Kopp's daughter and signed by Tubies. Notably, at the time this court ruled on the motion for summary judgment, there was no evidence of record that Kopp's daughter, in signing the document, acted as agent on behalf of Kopp.[4] As the statute of frauds clearly requires a written agreement executed by both parties, it is clear that the document relied upon by Kopp cannot meet this requirement.[5]

Moreover, a review of the document relied upon by Kopp reveals that it lacks any description of the land at issue. Moreover, the document does not refer to an agreement to sell the property but rather references "land rent." Critically, the language relied upon by Kopp as evidence of an agreement for the transfer of the property is couched

---

4. At trial, Kopp attempted to develop this evidence through testimony. Unfortunately for Kopp, the motion for summary judgment had already been granted as Kopp failed to cite evidence in the record establishing this element of her claim at the time the motion was under consideration. See Pa.R.C.P. 1035.3.

5. In her brief in opposition to the motion for partial summary judgment, Kopp did not suggest compliance with the statute of frauds but rather relied solely on the argument that partial performance of the oral agreement removed the contract from the requirements of the statute of frauds.

in extremely speculative language.[6] Rather than being definite and conclusive evidence of a meeting of the minds, the language relied upon by Kopp speaks in no such absolutes.

Kopp points out that Pennsylvania law permits a con-tract to be outside of the operation of the statute of frauds where the party seeking to enforce the conveyance has partially performed under the contract so as to render a decision inequitable and unjust. *Glasgow v. G.R.C. Coal Co.,* 295 Pa. Super. 498, 503, 442 A.2d 249, 250 (1981). Thus, the well-settled rule that the statute of frauds prevents the entry of a decree of specific performance against the vendor under an oral contract excepts from its application circumstances where continuous and exclusive possession was taken under the contract and improvements were made by the purchaser not readily to be compensated in money, or other equitable considerations make it impossible to do justice except through a grant of specific performance. *Id.* citing *Briggs v. Sackett,* 275 Pa. Super. 13, 17, 418 A.2d 586, 589 (1980).

Kopp's argument is misplaced, however, as neither the pleadings nor trial evidence established the performance of improvements by the buyer not readily compensable in money nor any other equitable consideration playing in favor of Kopp. In fact, the inequities, if any, weigh in favor of Tubies. Kopp, relying on an incomplete and contradictory set of notes, seeks to require Tubies to sell a lot to her at below-market rate and without any real

---

6. Kopp cites the following language: (5) How much does mom owe total? -25,155 ~~40,000~~ 65,000 if bought it all.

consideration. Sitting in equity, I find nothing that leads me to conclude that justice requires a different result. Under these circumstances, the grant of partial summary judgment was appropriate.

Kopp's challenge to this court's demurrer on the count of constructive trust is similarly without merit. A constructive trust is a formula through which the conscience of equity finds expression. *Chambers v. Chambers,* 406 Pa. 50, 55, 176 A.2d 673, 675 (1962). When property is acquired under circumstances that the holder of the legal title may not in good conscience retain the beneficial interests, equity converts him to a trustee. *Id.* Thus, a constructive trust arises where a person holds title to a property subject to an equitable duty to convey it to another on the ground that he or she would be unjustly enriched if permitted to retain it. *Pierro v. Pierro, supra,* 438 Pa. at 127, 264 A.2d at 696. Before a constructive trust can arise, it is necessary that the owner of the property must have acquired title to it in some way that creates an equitable duty in favor of the person seeking to benefit from imposition of the trust. *Shoemaker v. Lehigh Township,* 544 Pa. 304, 311, 676 A.2d 216, 220 (1996).

Instantly, the real estate at issue belonged solely to Tubies before any discussions took place between the parties. Tubies neither acquired the realty as a result of an arrangement with Kopp nor took title subject to any duty to convey it to Kopp. He purchased it, as his own, well before he entered into any subsequent arrangement with Kopp. As such, a constructive trust cannot be found to exist.[7]

7. Kopp's pleading is unclear in regard to what property she is claiming to have been held in constructive trust. In asking for judgment

Kopp next argues that the court erred by failing to consider an alleged confidential relationship between the parties of which Tubies took advantage of in unjustly enriching himself. It is difficult to address this issue as Kopp's argument is unclear. To the extent Kopp challenges this court's credibility determination, the claim is meritless. It is well-settled that the trial court, sitting as fact-finder, is free to believe all, part, or none of the evidence presented. *Stokes v. Gary Barbera Enterprises Inc.*, 783 A.2d 296, 297 (Pa. Super. 2001), *appeal denied*, 568 Pa. 723, 797 A.2d 915 (2002). While observing the demeanor of the witnesses from the witness stand, there was nothing to suggest an overbearing relationship between the parties. Although Kopp claimed to have trusted Tubies, her claim is somewhat belied by her later testimony. For instance, Kopp acknowledged having third parties that she relied upon review the sales agreement related to the sale of the condo. See trial transcript, p. 48. Additionally, Kopp was accompanied by her daughter during critical discussions with Tubies. Importantly, Kopp acknowledged that the purchase of the condominium by Tubies was an arm's-length transaction. See tr., p. 45.

The puzzling nature of Kopp's current claim arises from a paucity of any indication in the record that this court did not consider the extent of the relationship be-

---

in her favor, she requested the court to impose a constructive trust in the real estate owned by Tubies. All parties to this litigation treated the pleading as a request for the imposition of constructive trust solely upon the land. Moreover, the judgment entered by this court fully reimburses Kopp for any funds she may claim to have used in supporting the purchase of the mobile home thereby making her fully whole.

tween the parties. As set forth above, the existence, or lack thereof, of a confidential relationship had no bearing on the lack of legal merit to Kopp's claims for specific performance and constructive trust. Additionally, the final judgment in this matter resulted in a monetary award against Tubies and in favor of Kopp. Thus, there is no support in the record for Kopp's claim that this court failed to consider evidence of the parties' relationship or, if so, that Kopp was prejudiced. Accordingly, there is a lack of merit to this vague challenge.

Kopp's claim of trial error in sustaining Tubies' objection to exhibit 15 is meritless. Initially, I note that Kopp describes exhibit 15 as being an amortization schedule which was allegedly excluded by the court. The trial transcript, however, reflects the amortization schedule to be exhibit 14. The transcript further reflects that exhibit 14 was introduced and admitted as evidence without objection. See tr., p. 48. Kopp's claim, therefore, is patently frivolous.

During trial, Kopp attempted to have her daughter testify in regard to mathematical calculations breaking down a monthly payment made to Tubies based upon the previously referenced amortization schedule. Although this court permitted limited testimony in that regard, objection to an exhibit summarizing her calculations was sustained as argumentative and unnecessarily cumulative. This court can only speculate that it is the preclusion of this evidence to which Kopp currently appeals. Nevertheless, it is meritless.

The admission of evidence is a matter committed to the sound discretion of the trial court. *Commonwealth*

*v. Edwards,* 588 Pa. 151, 181, 903 A.2d 1139, 1156 (2006). The court's evidentiary decisions will not be overturned absent an abuse of discretion. *Id.* The trial court is well within its prerogative in excluding evidence that in the context of the litigation is merely repetitive or time consuming. Thus, multiple sources of different evidence as well as multiple similar sources establishing the same fact are properly excluded. See *Commonwealth v. Dent,* 837 A.2d 571, 577 (Pa. Super. 2003).

Instantly, Kopp was permitted to introduce the amortization schedule which she claimed corroborated her testimony. Additionally, her witness was permitted to summarize the argument which she claims supported her position. Although greater leeway may have been granted in a jury trial, there was no need to rehash this information in a non-jury setting as this court understood and considered the argument. Unfortunately for Kopp, it was not the preclusion of relevant evidence that resulted in the judgment but rather this court's finding that the argument lacked credibility.

Kopp's remaining challenges attack the amount of judgment entered in favor of Tubies. These challenges appear to be a combination of claims of legal error and abuse of discretion in the credibility determinations reached by this court. The challenges fail, however, because as previously mentioned, the trial court, sitting as fact-finder, is free to believe all, part, or none of the evidence presented. *Makozy v. Makozy,* 874 A.2d 1160, 1167 (Pa. Super. 2005). Although Kopp may very well disagree with this court's conclusions, her disagreement is not a basis to revisit the judgment. Several of Kopp's

challenges in this regard lack merit as there is sufficient evidence of record to support this court's conclusions.

Initially, Kopp challenges a monetary credit in favor of Tubies for past due rent on the condominium unit. One need look no further, however, than the testimony of Kopp to find evidence supporting the court's conclusion. At trial, Kopp admitted she had agreed with Tubies to make rental payment while she resided in the condominium of $430 per month. Tr., pp. 14-15. She further acknowledged leasing the condominium for a five-month period. Tr., p. 68. She claims to have made three payments during that period of time totaling approximately $662. Tr., pp. 15-16.[8] This court's finding is further supported by paragraph 1 of the articles of agreement signed on March 2, 2005 which provides for a monthly rental payment of $430. Kopp's non-specific statements of subsequent agreement with Tubies to reduce the monthly rent were rejected by this court as incredible.

Similarly, the record supports this court's adjustment of the final award for payments made by Tubies for the sewage bill, insurance, step repair, water heater vent, water heater, and loan interest. The deductions are properly authorized by paragraph 2 of the March 2, 2005 articles of agreement which permit Tubies to deduct "any outstanding debts or obligations for rent or other costs

---

8. Although Kopp's testimony reflected that part of one of the payments was to pay Tubies for fixing her dryer, this court essentially credited all of her payment to rent. I note that the October 9, 2007 order contains a typographical error reflecting that Kopp was credited for payments in the amount of $662 against the rent. Nevertheless, the court properly calculated and credited payments for $662.20 ($2,150 rent minus $662.20 totals $1,487.80 due in delinquent rent).

or expenses that Kopp would owe Tubies." To the extent that this language is ambiguous, Kopp acknowledged responsibility for the obligations. Tr., pp. 66-67. Moreover, this court found credible Tubies' testimony that the parties had contemplated all such costs being deducted before distribution of any proceeds to Kopp. See generally, Tr., pp. 99-106.

In analyzing this issue, it is important to recognize that a number of the items which Kopp currently complains about were items which improved the condominium and enhanced its value to the benefit of both parties. For instance, the step repair, water heater vent, and new water heater were items installed to improve the marketability of the condominium. Importantly, those items were not credited to Tubies from Kopp's share of the sale proceeds but rather were deducted from the sale price of the condominium prior to distribution of the proceeds. The distinction is significant as both Kopp and Tubies shared payment of those expenses. It is common practice that expenses related to the improvement of realty be deducted from the gross sales price prior to distribution. There is no reason to deviate from that equitable practice instantly.

Kopp's final claim is that this court committed error in interpreting the contract to require any excess proceeds from the sale of the condominium to be equally divided after the payment of costs and expenses. Kopp suggests that the contract requires 100 percent of the excess proceeds to be paid to her. She cites a provision of the agreement which reads that "if Candace Kopp is current with her rental payment with George Tubies that upon the sale of the real estate, George Tubies will reimburse Candace

Kopp for any excess equity that she might have had." On the other hand, Tubies cites a specific reference in the agreement that the parties agree "to split any net proceeds . . . less the amount of any outstanding debts or obligations for rent or other costs or expenses that Kopp would owe Tubies." This issue turns upon application of the rules of contract interpretation.

When interpreting the language of a contract, the intention of the parties is a paramount consideration. *Thomas Rigging and Construction Co. Inc. v. Contraves Inc.,* 798 A.2d 753, 755 (Pa. Super. 2002). Where agreements contain clear and unambiguous terms, it is necessary only to examine the writing itself to give effect to the parties' intent. *Osial v. Cook,* 803 A.2d 209, 213 (Pa. Super. 2002). A contract is ambiguous, however, if the terms are reasonably or fairly susceptible to different constructions and are capable of being understood in more than one sense. *Cordero v. Potomac Insurance Co. of Illinois,* 794 A.2d 897, 900 (Pa. Super. 2002). Where the language of a contract is ambiguous, the provision is to be construed against the drafter. *Cordero,* 794 A.2d at 900.

Undoubtedly, the language of the agreement could have been drafted more precisely. Nevertheless, there is no ambiguity in the language of the section cited by Kopp which requires, as a condition of distribution of proceeds, that Kopp be "current with her rental payments." Testimony at trial was unequivocal in establishing that Kopp was delinquent on her rental payments to Tubies. Accordingly, the provision cited by Kopp is inapplicable as a condition precedent has not been met.

Similarly, there is no ambiguity in the language cited by Tubies that the net proceeds would be split to the extent they exceeded Tubies' purchase price of $55,000. This provision is in accord with what credible testimony revealed at trial to be the intent of the parties. At the time of the transaction, Kopp was facing sheriff's sale of the condominium. Experience teaches that in such circumstances, any equity Kopp would have had in the property would be lost. In order to preserve her approximately $19,600 in equity, the parties entered into an agreement wherein Tubies would save the property from foreclosure by purchasing the property from Kopp at the price she originally paid for it. After satisfying the mortgage, the difference between the mortgage and the original purchase price would remain Kopp's profit. To the extent the parties received additional proceeds from the condominium's resale, those proceeds would be equally divided. As Tubies testified at trial, the agreement was a win/win for both parties. Kopp was to receive her equity and a portion of the profit which would otherwise have been lost; Tubies was to receive a share of the profit as a result of his efforts and investment. Kopp's current argument that Tubies went through this exercise and risk without any expectation of compensation is unrealistic. Accordingly, both the clear language of the contingency and this court's factual determination as to the intention of the parties led to a judgment based upon a split of the sale proceeds from the condominium.

For the foregoing reasons, it is requested that judgment in this matter be affirmed.[9]

---

9. Since Pennsylvania law recognizes that simple interest at the statutory rate is recoverable as damages for breach of contract from

the time performance was due, *Penneys v. Pennsylvania Railroad Co.*, 408 Pa. 276, 279, 183 A.2d 544, 546 (1962); *Pittsburgh Construction Co. v. Griffith,* 834 A.2d 572, 590 (Pa. Super. 2003), the verdict in this matter shall be molded to include interest in the amount of $2,398.96. A trial court may mold a verdict to include pre-judgment interest even after an appeal has been taken. *Pittsburgh Construction Co. v. Griffith,* 834 A.2d at 591. See also, Pa.R.A.P. 1701(b)(1).