## Turtle Creek Bank and Trust Company, Appellant *v.* Murdock.

278

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*James E. Keehan,* with him *John C. Fulton,* for appellant.

*Harvey A. Miller,* with him *Dale T. Lias* and *John D. Meyer,* for appellees.

OPINION BY BALDRIGE, J., September 30, 1942:

This appeal is from the order of the court below sustaining exceptions filed to a sheriff's special return of the sale of certain real estate with a schedule of the distribution of the proceeds attached thereto and made a part thereof. The question before us is: Are attorneys, who successfully established their client's legal ownership of certain real estate in an equity proceeding they instituted, entitled to an attorney's charging lien on a fund derived from the subsequent sheriff's sale of that real estate?

The essential facts, contained in a stipulation entered into by the parties, are in brief as follows: The Turtle Creek Bank and Trust Company, hereafter called the bank, entered of record on January 25, 1932, a judgment note against Donald Murdock in the sum of $2962.10, which was thereafter duly revived. In November 1938 Murdock asserted he was the owner of certain real es-

tate, the title which was not taken in his name owing to certain financial obligations he had incurred. His claim of ownership was disputed and he retained attorneys Dale T. Lias and John D. Meyer to represent him in an attempt to acquire the legal title to the property in question. An equity proceeding was instituted of which the bank had full knowledge but took no part therein. . The trial established that Murdock was the legal owner of the real estate which shortly thereafter was conveyed to him. On July 19, 1939, six days after the decree vesting title in Murdock, the bank issued a scire facias to revive their judgment to make it a lien on this real estate and judgment for $3048.08 was entered October 14, 1939. The bank issued execution on its judgment and on June 6, 1941, caused the real estate to be sold at sheriff's sale for the sum of $2600, the amount of its bid. After the payment of costs, taxes, etc. there was a balance for distribution of $2229.04, which the sheriff's return showed was applied to the bank's judgment. Murdock's attorneys, the present appellees, in their own behalf filed exceptions to the return and asked the court below to order the payment to them of $2000 with interest from December 1939.

Murdock, when he employed Lias and Meyer, was able to advance only the costs and a small retainer which was increased from time to time until the attorneys had received $100 inclusive of costs. The attorneys were of the opinion that further proceedings after the filing of the bill would not be necessary. Later, when it was found that a trial would be involved, they "agreed with the said Donald Murdock that they would go ahead with the litigation and depend upon their fee for such amount as should be later agreed upon if the litigation was successful."

After the court's decree was entered Murdock agreed to pay his attorneys $2000 but had no funds and conveyed the property in dispute to Lias and also gave his

judgment note for $2000 payable to Lias and Meyer which was entered of record. This conveyance was made subsequent to the bank's last revival of its judgment. At the time of the sheriff's sale the property had a fair market value of $6000 and a yearly rental value of $1100.

Before a charging lien is recognized it must appear: (1) that the attorney's services contributed primarily to creating the fund; and (2) that there was an agreement with the client that the compensation was to be paid from that fund. The appellant contends that neither of these essential prerequisites was proved and further that if it be assumed the attorneys had a charging lien it does not attach to real estate.

1. The right of an attorney to a charging lien upon a fund has been recognized by authorities generally for many years: 5 Am. Jur., Attorneys at Law, §242. Based as it is upon justice and equitable principles, it is necessarily somewhat indefinite in its nature, but if the attorneys' services primarily aided in producing the fund, in fairness someone else ought not to be permitted to appropriate the fruits of their efforts, provided that by agreement with the client they are to look to the fund for compensation: *Harris's Appeal*, 323 Pa. 124, 129, 186 A. 92; *Smyth v. Fidelity and Deposit Company of Maryland*, 125 Pa. Superior Ct. 597, 190 A. 398, 111 A. L. R. 481; Thornton on Attorneys at Law, Vol. 2, p. 978, §580. "The judgment, which has been produced by the efforts of an attorney while acting on behalf of his client, is, primarily the subject matter of a charging lien in favor of such attorney." 7 C. J. S., Attorney and Client, §228. A court will endeavor to protect attorneys who claim fees from a fund created largely, if not entirely, by their efforts if it is within its grasp and the payment thereof does not unduly interfere with established procedure or the rights of the third party. But factual matters, of course, are to be considered. The evidence established quite conclu-

sively that Murdock acquired title to the property in question solely through the services of his attorneys in the equity proceeding they instituted. It is fair to assume that without their efforts he would have had no legal title and there would have been no sheriff's sale or fund for distribution.

We think the present case is controlled, in principle, by the recent decision of our Supreme Court in *Harris's Appeal*, supra. There an attorney who represented an owner of land in condemnation proceedings was held entitled to a charging lien of ten per cent, even as against the mortgagee, a prior lien creditor, who had notice of the attorney's services in the condemnation proceedings, and, although entitled as mortgagee to be represented, stood idly by and permitted the owner's attorney to do all the professional work which was to the mortgagee's advantage. Mr. Justice MAXEY there stated, p. 134: "Under the authorities cited, where the attorney's client, for whom the services were in the first instance rendered, stands on an equal footing with other claimants to the fund, or the latter derive their rights through the owner of the property which gave rise to it, the equitable right of the attorney will be sustained. We will go farther and say that even where a lien creditor, such as the mortgagee in the case before us, has a claim upon the property superior to the owner's, yet, if his interest in the fund created, which the owner is primarily entitled to collect, is substantially identical with that of the owner, and the fund is realized solely through the efforts of the owner's attorney, who agrees to look to the fund for his compensation, the lien creditor must yield his claim to the attorney's reasonable claim for compensation and must yield his claim also to the payment of the legal costs." The money in the hands of the sheriff for distribution was in our judgment created, or at least made available, by the efforts of Lias and Meyer.

2. The stipulation of facts is not as clear on the question of an agreement as it might well be. We think, however, that it may be legitimately inferred from what is stated therein that Murdock and his attorneys agreed, as Murdock had no money, that the attorneys' fees would be paid from the real estate, or in the event of its sale, from the proceeds thereof. It is definitely shown by the 7th paragraph of the stipulation that the payment of the fees was contingent upon recovery of the land involved. After the successful termination of the litigation Murdock expressly agreed that his attorneys' fees be fixed at $2000 but he could not pay that sum as he was without funds. The conveyance of the property to one of the attorneys tends to confirm the contention that the parties agreed that the attorneys were to look to the land for the payment of their fees, and they were not to be prejudiced or endangered by reason of any conversion of real estate into cash. If conversion should occur the fund would take the place of the real estate.

3. That brings us to the appellant's last contention, viz., that the attorneys' charging lien, which is in the nature of a secret lien, does not extend to real estate. We concede that ordinarily a purchaser at a sheriff's sale is not bound to look beyond the record in the absence of notice of other liens: *Colonial Trust Company, Trustee, v. Lincoln Drive Apartments Corp. Kenneth W. Moore Appellant,* 299 Pa. 117, 123, 149 A. 165. That general rule is not applicable to the present factual situation because the attorneys' right to a charging lien upon the fund in court for distribution is based on equitable principles. *Harris's Appeal,* supra, p. 129. The proceeds of a sheriff's sale are always distributed "according to law and equity:" Acts of June 16, 1836, P. L. 755, §5, 12 PS §2661 and of April 10, 1862, P. L. 364, §1, as amended by the Act of June 4, 1901, P. L. 357, §1, 12 PS §2670; *Donnan v. Barnes,* 272 Pa. 33, 37, 115 A. 883; *Citizen's National Bank v. Wood et al.,*

326 Pa. 176, 179, 191 A. 602. It will be noted that if the attorneys in the instant case have a charging lien it accrued in the equity proceeding and was acquired prior to the bank's lien and existed at the time of the sheriff's sale. See *Pennsylvania Trust Co. of Pittsburgh for use v. Earnest*, 128 Pa. Superior Ct. 331, 334, 194 A. 520.

*Zinsser v. Zinsser*, 83 Pa. Superior Ct. 461; *Quakertown & Eastern Railroad Company v. Guarantor's Liability Indemnity Company*, 206 Pa. 350, 55 A. 1033; and *Irwin v. Workman*, 3 Watts 357, are cited by the appellant for the proposition that the attorneys' charging lien does not apply to money in the hands of a sheriff under writ of execution. Those cases with their dissimilar facts do not control the instant case and furthermore they were decided prior to *Harris's Appeal* which has considerably broadened, in this state at least, the scope of an attorney's common law charging lien. In that case at page 133 the Quakertown & Eastern Railroad Company case, supra, was referred to and distinguished.

It does not follow, however, that because we are upholding the attorneys' lien under the facts before us a secret or hidden lien would be valid against a bona fide purchaser at a sheriff's sale or against judgment creditors of a debtor who had no notice of the proceedings wherein the real estate was recovered for the client.

A careful consideration of this record convinces the majority of this court that there is no reason for disturbing the lower court's disposition of this case. Order is affirmed.