## Harrisburg Trust Company v. Snyder et al.

*Russell B. Updegraff*, for plaintiff.

*Hyman Goldstein* and *Robert L. Myers, Jr.*, for wage claimants.

*Joseph E. Brennan*, for United States.

REESE, P. J., March 21, 1947.—On October 3, 1945, there was filed in the prothonotary's office a chattel mortgage executed by defendant herein in favor of plaintiff. On September 19, 1945, the collector of internal revenue, on behalf of the United States, had filed three tax liens in the prothonotary's office against defendant herein, aggregating approximately $5,400.

On December 5, 1945, a writ of vend. ex. was issued on a judgment, entered on a warrant to confess judgment contained in a note attached to the chattel mortgage. Judgment was for the balance then due on the chattel mortgage, $3,900, with interest from October 8, 1945, together with costs and attorney's commission of 15 percent as provided in the warrant to confess judgment.

Thereafter, on December 17, 1945, after proper notice, the sheriff sold the personal property of defendant to plaintiff herein for $900. After deducting the costs of sale in the sum of $50.25, the balance, $849.75, was, by the return of the sheriff, placed in the hands of the prothonotary, the sheriff stating that it was impossible for him to determine proper distribution. Thereupon an auditor was appointed to make distribution.

Prior to the sheriff's sale two wage claims were filed with the sheriff, one by Arthur E. Love for $541.38, and the other by L. A. Johnson for $216. The auditor held hearings, at which various claims were proved.

The wage claim of Love was proved, but the other wage claimant, Johnson, did not appear to prove his claim. A claim was also presented by Russell B. Updegraff, as attorney for plaintiff herein, for $585, which he claims as the attorney's commission of 15 percent provided for in the warrant to confess judgment. In his report the auditor distributed the fund, as follows: (1) the payment of the costs of audit; (2) the docket costs of $60.25 in connection with the judgment and vend. ex.; (3) the wage claim of Arthur E. Love in the sum of $200, and (4) the balance to the collector of internal revenue.

The United States has filed an exception, objecting to the allowance of the wage claim, and Mr. Updegraff has filed an exception, objecting to the disallowance of his claim for $585 as an attorney's fee.

In our opinion, the wage claim was properly allowed. Under sections 3670 and 3672 of the Internal Revenue Code, R. S. §3186, as amended, 26 U.S.C. §§3670 and 3672, unpaid taxes due the United States are a lien on all property, real and personal, of the delinquent taxpayer, but the lien is not valid as against any mortgagee, pledgee, purchaser, or judgment creditor until filed in the proper office, which, in this case, is the prothonotary's office of this court. Under section 3671 of the Internal Revenue Code, 26 U. S. C. §3671, "the lien shall arise at the time the assessment list was received by the collector and shall continue until . . . . satisfied. . . ." Two of the tax claims herein are dated September 10, 1945, and the other is dated September 12, 1945. Each of the claims recites the assessment against defendant herein, but the date on which the assessment list was received by the collector is left blank in each claim and no evidence was offered before the auditor as to the date on which the assessment list was received by the collector. In the absence of any such evidence, the auditor properly assumed that the

assessment list was received on the date of the claims, to wit, as to two of them, on September 10, 1945, and as to the other on September 12, 1945. Therefore, the Government's lien dates from September 10th and 12th. The Government made no claim for priority by reason of any sovereign prerogative. The sections quoted above merely give the Government a lien for unpaid taxes.

The Act of April 9, 1872, P. L. 47, as amended, 43 PS §221, provides that wages of the type defined in the statute shall be a lien upon the employer's personal property used in his business to the extent of the interest of the employer in the property, and shall be preferred and first paid out of the proceeds of the sale of such personal property. It is also provided that protection against wage claims is accorded only to mortgages or judgments entered before such labor is performed. Liens created by mortgage or otherwise after the work is done cannot prevail against the wage claim: Bank v. Chemical Co., 9 Pa. Superior Ct. 275. Under the Act of 1872, supra, preference is given to a wage claim for any period not exceeding six months preceding the sale, and not exceeding $200. The wages claimed by the wage claimant herein were earned in the six months preceding the sale and were also earned before the date of the Government lien. As stated above, the Government does not claim any sovereign priority. Therefore, it depends merely upon the position of its lien. Inasmuch as the lien for the wage claim dates from the time the wages were earned, it antedates the Government's lien. The auditor was therefore correct in allowing the wage claim of $200 ahead of the Government's lien for unpaid taxes.

Passing to the claim of Mr. Updegraff for an attorney's fee of $585, it is urged that he has a charging lien therefor on the fund for distribution under the principle that an attorney has a charging or equitable

lien upon a fund which has been procured by the efforts of the attorney while acting on behalf of his client. That an attorney does have a charging lien under proper circumstances has been recognized in many cases; for example, in Harris' Appeal, 323 Pa. 124; Turtle Creek Bank and Trust Co. v. Murdock, 150 Pa. Superior Ct. 277; but, it was pointed out in Zinsser, for use of Thompson, v. Zinsser, 83 Pa. Superior Ct. 461, 464, that the rule that an attorney may claim his fees as a preference out of money raised by his services when it has come within the grasp of the court, applies only to a court of equity, or to a proceeding in the orphans' court, and that it does not apply to a common-law action or to money in the hands of a sheriff under a writ of execution. It was also held in Quakertown & Eastern Railroad Co. v. Guarantors' Liability Indemnity Co. of Philadelphia, 206 Pa. 350, and Irwin v. Workman, 3 Watts 357, that an attorney's charging lien does not apply to money in the hands of a sheriff under a writ of execution. To the same effect is Miners Savings Bank of Pittston v. Shepris, 25 Luz. 381; Blakeley's Petition, 39 D. & C. 675, and Dubois' Appeal, 38 Pa. 231. In the Dubois case, the court said that in distributing money in court the common pleas is guided by the liens of record; that the attorney has no title to the judgment which he secures, and not being an owner he cannot claim as a distributee. It was also pointed out in Harper v. Consolidated Rubber Co., 284 Pa. 444, that an attorney's commissions stipulated for in a warrant to confess judgment, are not costs but are part of the judgment and belong, not to the attorney, but to plaintiff in the judgment, and that therefore such commissions are to be preferred or postponed as the principal debt is preferred or postponed.

In Turtle Creek Bank & Trust Co. v. Murdock, 150 Pa. Superior Ct. 277, 283, it was pointed out that the

cases, herein cited, holding that an attorney's charging lien does not apply to money in the hands of a sheriff under a writ of execution, were decided prior to Harris' Appeal, 323 Pa. 124, which has considerably broadened the scope of an attorney's common-law charging lien. However, we do not think that what was decided in Harris' Appeal would permit a charging lien under facts such as those now before us. In Harris' Appeal, an attorney, after litigation, secured a favorable award in the condemnation proceeding for the owner of the condemned property. After the award was made, but before it was paid by the city, the holder of a mortgage on the property filed a petition to have the whole award paid to it as lien creditor, and it was held that the fund was first subject to the attorney's claim for the reasonable value of his services. Two facts must be particularly noted. The fund produced by the attorney's services was created for his client and belonged primarily to the client, and under an agreement with the client the attorney was to look to the fund for his compensation.

The facts in the Turtle Creek case are somewhat similar. An attorney for one Murdock, after the trial of an equity suit, finally established that Murdock was the legal owner of certain real estate, title to which was held by another as a resulting trustee. Shortly after the decree vesting title in Murdock, plaintiff bank revived a judgment against Murdock, thus making it a lien on the real estate and thereafter execution was issued against the real estate and the property sold for less than the amount of the judgment. It was held that Murdock's attorney had a charging lien on the fund ahead of the judgment of the bank. Here again, the attorney's services succeeded in procuring a property for his client and which belonged primarily to his client, and under an agreement with the client the attorney was to look to the property or any fund derived therefrom for his compensation.

In the case before us the property that was sold belonged to defendant herein, the judgment debtor. Mr. Updegraff's services did not procure any property or money for his client, plaintiff herein, which belonged primarily to plaintiff. It cannot be said that the fund realized by the sheriff's sale ever belonged, in any sense, to plaintiff herein. Plaintiff merely had a lien, which post-dated the lien of the United States. Furthermore, there is nothing on the record to show any agreement with his client under which the attorney was to look to any fund realized by the sale for his compensation. The attorney seeks the full 15 percent on the amount owed to his client, or, in other words, 15 percent of $3,900, although the sheriff's sale realized only $900. As already pointed out, such attorney's commissions did not belong to the attorney nor does he have a charging lien therefor.

And now, March 21, 1947, the exceptions to the auditor's report are overruled and dismissed, and distribution is ordered in accordance with the schedule of distribution in the auditor's report.