In re W/B ASSOCIATES, Debtor.

Estate Partners, Ltd., Plaintiff,

v.

Edward C. Leckey, Esquire, Theodore R. Paul, Tri–State Management, Inc., and Atlantic National Capital Corporation, Defendants.

Bankruptcy No. 98–21139.
Adversary No. 00–2223.

United States Bankruptcy Court, W.D. Pennsylvania.

April 1, 2004.

Edward C. Leckey, Pittsburgh, PA, pro se.

Elene Mountis Moran, Pittsburgh, PA, for Theodore R. Paul.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

On April 10, 1988, Theodore R. Paul ("Paul") filed suit against Aubrey W. Glad-

---

1. The Court's jurisdiction was not at issue.

This Memorandum Opinion constitutes our

stone ("Gladstone") and National Leasing Corporation ("National") in the Court of Common Pleas of Allegheny County. Dkt. No. 45, Stipulation of Facts (hereafter, "SOF"), ¶ 17. The Common Pleas Court entered judgment in favor of Paul, and against Gladstone and National on April 12, 1993, in the amount of $447,000.00 and the decision was affirmed by the Superior Court of Pennsylvania. SOF, ¶ 18.

Before entry of the April 12, 1993, judgment, on January 29, 1992, Gladstone assigned his assets, including a Savings and Loan Assurance Company judgment ("SLAC Judgment")[2] to Estate Partners. SOF, ¶ 19. Estate Partners was a limited partnership composed solely of Gladstone's wife, Marianne Gladstone, and Robert Mayer, the builder of Gladstone's Florida home.

On November 17, 1993, Paul initiated a fraudulent conveyance action against Gladstone and Estate Partners in the Court of Common Pleas of Allegheny County.[3] Gladstone and Estate Partners removed the action to the U.S. District Court for the Western District of Pennsylvania.

Ultimately, the U.S. Court of Appeals for the Third Circuit held that Gladstone's transfers to Estate Partners were fraudulent conveyances.[4] Remanding the case to the District Court, the Third Circuit ordered that the fraudulent transactions be set aside and further ordered that the assets fraudulently conveyed be placed in a constructive trust. Then–Chief Judge Ziegler of the District Court entered an order on September 19, 1996, setting aside the fraudulent conveyances and placing a con-

structive trust on the assets "to the extent necessary to satisfy the judgment of [Paul] against [Gladstone]."[5] The assets subject to the constructive trust include, inter alia, the SLAC Judgment, Gladstone's interest in a Promissory Note payable to Gladstone and Thomas A Evans (the "Grid Note") and Gladstone's interest in the W/B Partnership Note (the "Note").

W/B Associates filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 13, 1998. Subsequently, on May 1, 1998, a Liquidating Plan of Reorganization was approved by this Court and Estate Partners became a disputed, unliquidated and contingent Class 3 creditor of W/B Associates under the Plan. Estate Partners based its claim on a judgment obtained against W/B Associates on the Note which was purchased at a Sheriff's sale. On June 6, 2000, Estate Partners filed the instant adversary proceeding, seeking a determination as to various parties' entitlements to the W/B Fund deposited in the Court's registry. Paul and Edward C. Leckey ("Leckey") are the only remaining claimants against this fund.[6]

The matters before the Court are Leckey's Motion for Summary Judgment and Paul's Cross–Motion for Summary Judgment. Both the Motion and Cross–Motion seek award of the balance of the W/B Fund.

Entry of summary judgment is appropriate if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judg-

findings of fact and conclusions of law.

2. Case No. G.D. 87–16282.

3. Case No. G.D. 93–18828(a).

4. D.C. Civ. Action No. 93–2125, June 28, 1996.

5. Order of the Court, Civ. Action No. 93–2125, September 19, 1996. Dkt. No. 58, Exh. B.

6. Much of this fund has been distributed pursuant to prior orders of this Court.

ment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Carter v. McGrady,* 292 F.3d 152, 157 (3d Cir.2002). As noted by the Third Circuit in *Carter,* "The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Carter,* 292 F.3d at 157. *See also Mengine v. Runyon,* 114 F.3d 415, 418 (3d Cir.1997); *Sempier v. Johnson & Higgins,* 45 F.3d 724, 727 (3d. Cir.1995), *cert. denied,* 515 U.S. 1159, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).

A motion for summary judgment should be granted unless the party opposing the motion is able to produce evidence which, considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor. *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3d Cir. 1993). To defeat a motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 743 (3d Cir.1996).

The material facts are undisputed and the matter is ripe for summary disposition. Therefore, based on a review of the pleadings and representations of counsel, the Court finds that Leckey has not met his burden of proof in that he has failed to satisfy at least two of the five requirements for a charging lien under Pennsylvania law and therefore the Court denies Leckey's Motion for Summary Judgment. Further, the Court finds that Paul has established his case for entitlement to the W/B Fund based on a constructive trust in his favor placed on the source of the W/B Fund by the District Court of this district.

Finally, the Court grants Paul's Cross–Motion for Summary Judgment on the grounds that (i) Paul has established his entitlement to the funds; (ii) even viewing the allegations of Leckey in the light most favorable to Leckey's position, Paul still would have a prior claim to the funds because Paul's constructive trust is deemed to have been placed on the funds before Leckey performed the services for which he alleges that he has a charging lien.

### Leckey's Motion for Summary Judgment

Leckey asserts a charging lien on the W/B Fund based on his services in representing Estate Partners, Ltd. ("Estate Partners"). Leckey began representing Estate Partners on July 9, 1992. Over the next six years, Leckey continued to represent Estate Partners on a variety of matters that he asserts secured the fund in this adversary proceeding. These proceedings included:

[1] The Execution against Tri–State Management and First Valley Bank resulted in delivery of the W/B Associates Partnership Note and Guaranty Agreements to the Sheriff of Allegheny County for a Sheriff's sale at which Estate Partners took its judgment against W/B Associates. [2] At the time of the first scheduled Sheriff's sale, Paul filed a Property Claim in which he claimed that he, not Tri–State Management, was the owner of the W/B Associates Partnership Note and Guaranty Agreements, and it was Leckey's successful defense of this Property Claim in the ensuing Sheriff's interpleader that established the right of Estate Partners to levy upon and have the W/B Associates Partnership Note and Guaranty Agreements sold by the Sheriff. [3] Third, Leckey's defense of the Fraudulent Conveyance Act on behalf of Estate Partners result-

ed in title to the W/B Associates Partnership Note and Guaranty Agreements remaining in Estate Partners, albeit subject to a Constructive Trust in favor of Paul. [4] In the Declaratory Judgment Action Judge James had entered an Order declaring that the SLAC Judgment upon which Estate Partners issued execution against Tri–State Management and First Valley Bank had been extinguished and that the Sheriff's sale at which Estate Partners purchased the W/B Associates Partnership Note and Guaranty Agreements was void, and had directed Estate Partners to return these documents to Tri–State Management. Leckey's successful appeal from this Order resulted in the Superior Court vacating the Order in its entirety, which established Estate Partner's title to the W/B Associates Partnership Note and Guaranty Agreements it had purchased at the Sheriff's sale on August 3, 1994.[5] Finally, Atlantic National had attempted to attach the W/B Associates Partnership Note and Guaranty Agreements based on a judgment against Tri–State Management. Leckey's successful defense of this Attachment established title to these documents in Estate Partners as against Atlantic National. In summary, the services of Leckey on behalf of Estate Partners in the proceedings in which he represented it resulted in Estate Partners obtaining possession of and in establishing its title to the W/B Associates Partnership Note upon which it took Judgment against the Debtor, which is the basis for Estate Partners' Claim to the Fund in this Adversary.

Dkt. No. 56, Brief of Edward C. Leckey in Support of Motion for Summary Judgment, pp. 14–15. [Numbers added for clarity.]

■ The Pennsylvania Supreme Court set the standards for establishing a charging lien in *Recht v. Urban Redevelopment Authority of the City of Clairton*, 402 Pa. 599, 608, 168 A.2d 134, 139 (1961).

> ... [B]efore a charging lien will be recognized and applied, it must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable grounds; (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid; (3) that it was agreed counsel look to the fund rather than the client for his compensation; (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

*Recht*, 402 Pa. at 608, 168 A.2d 134. The Court has heard vigorous argument from both sides in this adversary proceeding regarding the second and third *Recht* standards.

■ The plain meaning of the second standard does not support Leckey's position. The fund out of which he seeks to be paid, the W/B Fund, was created in this Court from the liquidation of the Note pursuant to the Plan of Reorganization. The debtor's attorneys, not Leckey, were responsible for securing this fund. Leckey himself admits this deficiency:

> Although Leckey's services were rendered in the State Courts and not in this Court where the Fund has been raised, Leckey's services still "operated substantially or primarily to secure" the Fund in this Adversary. *See Turtle Creek Bank & Trust Co. v. Murdock*, 150 Pa.Super. 277, 28 A.2d 320 (1942) where the services of the Attorney which secured the fund was raised were rendered in an Equity Action, but the

fund arose in an Execution proceeding initiated by another creditor.

Dkt. No 56 at 13–14.

Leckey's citation to *Turtle Creek* is ill-founded. The *Turtle Creek* decision was issued in 1942, almost twenty years before the controlling decision in *Recht*. Contrary to Leckey's assertion that the *Turtle Creek* case was cited "with approval" in *Recht* (Dkt. No. 63, Leckey's Brief in Response to Paul at 10) the Court has examined the *Recht* decision and finds no words that would indicate approval of or acquiescence in the *Turtle Creek* decision. *Turtle Creek* was reviewed by the *Recht* court along with eight other prior decisions on charging liens. Indeed, the *Recht* decision itself appears to contradict Leckey's argument that funds secured in earlier proceedings can give rise to a charging lien in a later proceeding. *Recht*'s attorney, Niklaus, represented Recht in a viewers' proceeding but he did not participate in a later jury trial in the Court of Common Pleas. When Niklaus petitioned the Court of Common Pleas for a charging lien for the value of his services in the viewers' proceeding, the court considered the viewers' proceeding and the jury trial as one and concluded that since the viewers' proceeding was a statutory requirement for the appeal and jury trial, the services of Niklaus played an essential and necessary part in the ultimate disposition of the case and his efforts operated to create the fund secured in the jury trial.

In reviewing the lower court's decision, the Pennsylvania Supreme Court in *Recht* found that an attorney's services in an earlier proceeding did not give rise to a charging lien against a fund created in a later proceeding.

> The only fund available in this case is that fund which was created as a result of the trial [No. 816 January Term]. Attorney Niklaus participated in the ac-tion at No. 312 April Term but did not participate in action No. 816 January Term. While his services were valuable to Recht's cause it follows from what we have said that his services did not operate, substantially or primarily, to create the fund upon which he now claims the right to a charging lien. His services were rendered in No. 312 and not in No. 816, and, therefore, not in the litigation which gave rise to the fund. He has no right to a charging lien as against that fund.

*Recht,* 402 Pa. at 609, 168 A.2d 134.

■ Therefore, *Recht* stands for the proposition that a charging lien against a fund must arise in the same proceeding in which the fund was created even when, in the Pennsylvania Supreme Court's words, the services of the attorney were "valuable" to the creation of the fund.

Even if we were to assume, *arguendo,* that the W/B Fund in some way existed before the action of this Court in approving the Plan of Reorganization, Leckey still fails to establish that his services operated, substantially or primarily, to create the fund. The source of the money in the W/B Fund was the Note. The Note came into the possession of Estate Partners following the Sheriff's sale. It is important to recognize the timing of these actions. The judgments were fraudulently conveyed to Estate Partners in January 1992, five months before Leckey was engaged as counsel to Estate Partners. The Sheriff's sale occurred in June 1993, apparently during Leckey's service as Estate Partner's counsel. Thus, the most charitable view of Leckey's role in "creating" the source of funds which would later be made into the W/B Fund is his service from 1992 to 1993 in executing on the SLAC Judgment. The fee for those services over several months account for a small fraction

of the claim made by Leckey in this adversary proceeding.[7]

Of the five legal proceedings Leckey uses in computing his claim, only the first action, the execution against Tri–State Management and First Valley Bank, can remotely be argued to have "created" the Note that would later form the W/B Fund. The other four proceedings may have served to preserve Estate Partner's rights to the Note, but they did not create any funds. The Court notes that the *Recht* decision uses the word "secure" the fund rather than "create" the fund in its listing of the five criteria for a charging lien. The Court acknowledges that there are at least two plain meanings in common legal parlance for the term "secure." The first is to create or cause something to come into being. A second meaning can be to preserve or safeguard, an interpretation that is more consistent with Leckey's services in the later four proceedings. However, neither *Recht* nor its progeny support the latter interpretation. In fact, the *Recht* court itself in a later portion of the opinion substituted the word "create" for the word "secure." As quoted above in dismissing Niklaus' claim for a charging lien, the Recht court wrote: "While his services were valuable to Recht's cause it follows from what we have said that his services did not operate, substantially or primarily, to *create* the fund upon which he now claims the right to a charging lien." *Recht,* 402 Pa. at 609, 168 A.2d 134. (Emphasis added.)

Leckey has not met his burden of proof in that the services he provided did not meet the second criterion of the *Recht* test. His services were not performed in the proceeding in which the fund was created, i.e., in the W/B Associates bankruptcy case. Further, even if this Court were to view Leckey's arguments in the most favorable light and expand the *Recht* second criterion to include Leckey's services in other proceedings which formed the source for the W/B Fund, Leckey has not established how all or even most of those services for which he seeks a charging lien "operated substantially or primarily" to create the fund. Therefore, Leckey has not met the second criterion of the *Recht* test. Since Pennsylvania requires that all five criteria be met for imposition of a charging lien, Leckey's Motion for Summary Judgment fails.

The Court also finds that Leckey has not met his burden of proof regarding the third *Recht* criterion, that it was agreed counsel look to the fund rather than the client for his compensation. As noted earlier, the plain meaning of the *Recht* court's decision requires that the parties intended that the attorney would look to the W/B Fund for compensation. The petition in this bankruptcy case was filed in 1998. Thus, it was impossible for Leckey and Estate Partners to have intended (in 1992) that Leckey be paid by the W/B Fund for services substantially completed before this bankruptcy case was opened (in 1998).

Again, the Court will consider, *arguendo,* Leckey's position that an agreement existed that Leckey was to look to the source of funds which would later become the W/B Fund for his compensation. The principal proof of such an agreement is the purported engagement letter of January 7, 1994 (the "Representation Letter") sent by Leckey to Bomar Builders, the general partner of Estate Partners. Among the terms of the Representation Letter are the following details:

**7.** As will be discussed below in regard to the third *Recht* criterion, there are significant issues of material fact in dispute that have not been resolved concerning the agreement under which Leckey performed these services, especially before 1994.

For the services which I have performed beginning in July, 1992, through November, 1993, with respect to the Attachment Execution against First Valley Bank and levying upon the Note of W/B Associates to Tri–State Management, Inc. and certain Guarantees of this Note and my services to conclusion of this matter, as well as my services on behalf of Estate Partners, Ltd. in the Fraudulent Conveyance Action instituted by Theodore Paul and my services on behalf of Estate Partners, Ltd. and Bomar Builders, Inc., in the Declaratory Judgment Action filed by W/B Associates, et al., I shall be compensated from any amounts paid on account of the Note from W/B Associates to Tri–State Management, Inc., dated November 30, 1982, and/or the Guarantees of this Note, including those purchased by Bomar Builders, Inc. at the Sheriff's Sale conducted by the Sheriff of Allegheny County on April 2, 1992, at which I represented Bomar Builders, Inc., at the rate of $250.00 per hour or forty (40%) percent of all such amounts paid, whichever is less.

Dkt. No. 57, Exh. D at 1.

The argument before this Court regarding the Representation Letter has centered on two material issues: (i) that the letter is unsigned and (ii) that during the course of this adversary proceeding and related proceedings, Leckey has himself alleged that the letter had been procured by fraud.

In the hearing in this adversary proceeding on June 10, 2003, the Court expressed its concern that an unsigned agreement was invalid for the purposes of establishing a charging lien or complying with the third *Recht* criterion. The Court invited counsel for both parties to address the matter of the Representation Letter in supplementary statements.

Leckey attempted to assure the Court that an unsigned engagement letter complied with Rule 1.5 of the Pennsylvania Rules of Professional Conduct, specifically Rule 1.5(c). For the purposes of this decision, the Court agrees with Leckey that an unsigned contingency fee agreement does not necessarily violate the Pennsylvania Rules of Professional Conduct. However, this is irrelevant to the question posed by the Court to the parties, i.e., whether an unsigned engagement letter constitutes sufficient proof of the intent of the parties to have counsel look to the W/B Fund (or even its sources) for compensation and thus satisfy the rigid requirements of the third *Recht* criterion?

The Court is not persuaded by Leckey's suggestion that the unsigned Representation Letter meets the third standard of *Recht* for a charging lien. An unsigned agreement, in and of itself, raises material questions as to its validity and applicability.

The Representation Letter has also been the target of a strong attack by Paul. Paul disputes the validity of the Representation Letter, both on the grounds that it is an unsigned letter and that Leckey himself had initiated a lawsuit in state court to contest its validity, stating that it had been procured by fraud. Dkt. No. 58, Paul's Brief in Response to Leckey's Motion for Summary Judgment, Exh. D. See also Dkt. No. 66, Paul's Supplemental Brief at. 2. The Court finds that the arguments of Paul that Leckey has taken inconsistent positions with respect to the validity of the Representation Letter raises a question of law that requires further examination and thus do not allow entry of summary judgment as requested by Leckey.

For all the above reasons, the Court finds that Leckey has not satisfied the third *Recht* criterion because (i) there is no agreement between him and Estate Part-

ners that allows Leckey to look to the W/B Fund itself for compensation and (ii) Leckey has not demonstrated that an agreement existed that Leckey was to look to the source of funds which would later become the W/B Fund for his compensation.

Since Leckey has not established at least two of the five mandatory requirements for a charging lien under Pennsylvania law, the Court denies Leckey's Motion for Summary Judgment. Further, because of our ruling on Paul's Cross–Motion, no further proceedings will be scheduled.

## Paul's Cross–Motion for Summary Judgment

■ The Court finds that Paul has established his claim to the W/B Fund. Judgment was granted in favor of Paul and against Gladstone on April 12, 1993. SOF, ¶ 18. Gladstone assigned to Estate Partners, among other things, the SLAC Judgment entered at GD 87–16282 in the Court of Common Pleas of Allegheny County and the assignment was recorded on January 30, 1992. SOF, ¶ 19. Paul sued Gladstone and Estate Partners on November 17, 1993, claiming that the assignment from Gladstone to Estate Partners was a fraudulent conveyance, and, on appeal to the Third Circuit, the assignment was determined to be a fraudulent conveyance and was set aside. SOF, ¶ 32. The United States District Court for the Western District of Pennsylvania imposed a constructive trust over the assets transferred by Gladstone to Estate Partners in favor of Paul. SOF, ¶ 33.

One of the assets transferred by Gladstone to Estate Partners and subjected to the constructive trust by Judge Ziegler was the Note.

IT IS FURTHER ORDERED that the assets that were transferred by Gladstone to Estate Partners and which are hereby subject to the constructive trust

are as follows: ....(c) Gladstone's interest as a stockholder in the American Equity Group, among which was Tri–State Management, Inc., in and to (i) a Promissory Note dated as of November 30, 1982, from W/B Associates to Tri–State Management, Inc. in the principal amount of $285,000 (W/B Partnership Note)....

Civ. Action 93–2125, Western District of Pennsylvania, Order dated September 19, 1996.

■ The W/B Partnership Note, previously defined in this case as the Note, was liquidated by the debtor's Plan of Reorganization in this bankruptcy case to form the W/B Fund at issue in this adversary proceeding. It is unquestioned in bankruptcy and trust law that a constructive trust runs with the proceeds of a trust. *Central National Bank v. Connecticut Mut. Life Ins. Co.*, 104 U.S. 54, 68, 26 L.Ed. 693 (1881). Therefore, Paul has established his claim to the W/B Fund, to the extent necessary to satisfy the terms of the constructive trust imposed by the District Court on September 19, 1996.

## Priority of Claims

■ The Court also finds that, even viewing Leckey's claim and arguments in the most favorable light and assuming, *arguendo*, that all or part of Leckey's claim for services is an allowed claim, Paul's claim still has priority in the distribution of the W/B Fund. Paul's right under the constructive trust on the Note arose as a matter of law before Leckey provided any services to Estate Partners. As Judge McCullough recently wrote for this Court, "Pennsylvania adheres to the majority view that constructive trusts arise when the facts giving rise to the fraud or wrong occur, which fraud or wrong constitutes the basis for impression of the con-

structure trust." *In re Aultman,* 223 B.R. 481, 483 (Bankr.W.D.Pa.1998). *See also Grubbs v. Dembec,* 274 Pa.Super. 362, 418 A.2d 447, 451, n. 1 (1980)("Although a constructive trust may not be judicially decreed until many years subsequent to the transaction giving rise to the trust, the accepted theory is that the constructive trust is in existence at the inception of the transaction.... and the beneficiary is possessed with an equitable interest in the trust property prior to the declaration of the constructive trust.") *See also In re General Coffee Corp.,* 828 F.2d 699, 702–703 (11th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988)(the majority rule is that a constructive trust exists from the moment the fraudulent transaction occurs on which the constructive trust is based).

The Court finds that Paul's claim arose as of January 29, 1992, when Gladstone assigned assets to Estate Partners in a fraudulent conveyance. Since Leckey did not perform any of the services for which he seeks a charging lien before July 9, 1992, it follows that Paul's claim has priority over any claim by Leckey.

### Conclusion

The Court finds that Leckey has not satisfied the second and third of the five mandatory criteria for a charging lien under Pennsylvania law. Therefore, Leckey's Motion for Summary Judgment is DENIED.

The Court finds that Paul has established his claim to the W/B Fund as a result of a constructive trust imposed by our District Court on the Note which was liquidated to form the W/B Fund. Therefore, Paul's Cross–Motion for Summary Judgment is GRANTED.

An appropriate order will be entered.

### ORDER

AND NOW, this first day of April, 2004, for the reasons expressed in the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that Defendant Edward C. Leckey, Esquire's Motion for Summary Judgment is DENIED and that Defendant Theodore R. Paul's Cross–Motion for Summary Judgment is GRANTED. When this Order becomes final, the Clerk shall distribute the funds held in its registry to Theodore R. Paul.

The Clerk shall close this Adversary Proceeding.