

Opinions of the United
States Court of Appeals
for the Third Circuit

8-9-2006

# In Re: Edward Leckey

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4479

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Edward Leckey " (2006). *2006 Decisions.* Paper 600.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/600

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-4479
_____

In Re:  W/B ASSOCIATES, Debtor

ESTATE PARTNERS, LTD.

vs.

EDWARD C. LECKEY, ESQUIRE;
THEODORE R. PAUL; TRI-STATE
MANAGEMENT, INC; ATLANTIC
NATIONAL CAPITAL CORPORATION
                    Edward C. Leckey, Esq., Appellant


_____


On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 04-cv-01404)
District Judge:  Honorable David Stewart Cercone
_____


Submitted Under Third Circuit LAR 34.1(a)
August 8, 2006
Before:  FISHER, ALDISERT AND WEIS, <u>CIRCUIT JUDGES</u>

(Filed: August 9, 2006)
_____

OPINION
_____

1

PER CURIAM.

Although events related to this case span decades, we will endeavor to recount no more details than necessary because the parties are familiar with the facts.[1] W/B Associates is the debtor in the underlying bankruptcy proceeding. After the debtor's sole asset, a three-story office building, was sold, the Bankruptcy Court approved a liquidating plan of reorganization in which Estate Partners, Ltd., ("Estate Partners") was named as a disputed, unliquidated, and contingent unsecured creditor. Estate Partners' claim was based on a November 2, 1994 judgment entered against W/B Associates. In relevant part, the judgment was upon a November 1982 $285,000 promissory note made by W/B Associates (hereinafter "W/B Note"). Theodore Paul and Edward C. Leckey both asserted claims to the funds ultimately received by Estate Partners and deposited into the Bankruptcy Court's registry. Estate Partners instituted an adversary proceeding, seeking a determination as to which claimant was entitled to the money in the fund.

Paul claimed all funds payable to Estate Partners based on a constructive trust. In an earlier lawsuit, which wended its way to us, Paul, a judgment creditor of Aubrey Gladstone, demonstrated that Gladstone had fraudulently conveyed his assets to Estate Partners (which was composed only of Gladstone's wife, Marianne, and the builder

---

[1] In the Bankruptcy Court, the parties stipulated to the most relevant facts. (App. at 115a - 123a.)

2

of Gladstone's Florida home).[2] In accordance with our instructions, on remand, the District Court set aside the transfer and imposed a constructive trust in favor of Paul to the extent necessary to satisfy the judgment that he was owed ($447,000 plus interest and costs).[3] Included in the assets subject to Paul's constructive trust was the W/B Note.

Leckey asserted that he was entitled to the funds based on a charging lien for legal services he had provided Estate Partners in a six-year period. Specifically, he claimed that he helped create or secure the fund deposited in the Bankruptcy Court because (1) Leckey oversaw an execution of judgment against two other parties, which resulted in the delivery of the W/B Note and Guaranty Agreements to the Allegheny County Sheriff for the Sheriff's Sale at which Estate Partners took its judgment against W/B Associates; (2) Leckey defended Estate Partners' right to levy upon and have the W/B Note and Guaranty Agreements sold by the Sheriff against Paul's claim of ownership; (3) on behalf of Estate Partners, Leckey successfully appealed from, and won vacation of an order that had voided Estate Partners' right to the W/B Note and Guaranty Agreements; and (4) Leckey defended Estate Partners against another party's attempt to

---

[2] Our opinion in that case, Paul v. Gladstone, No. 95-3419, slip op. (3d Cir. June 28, 1996), can be found in the Appendix beginning on page 76a.

[3] The District Court's September 1996 order is in the Appendix at pages 96a-97a.

3

attach the W/B Note and Guaranty Agreements.[4]

Paul and Leckey filed cross-motions for summary judgment. The Bankruptcy Court denied Leckey's motion, holding that Leckey had not satisfied two criteria necessary for the imposition of a charging lien. The Bankruptcy Court granted Paul's motion, holding that Paul had established his claim to the fund based on the previously-imposed constructive trust. The Bankruptcy Court also held that even if Leckey's claim were allowed, Paul's claim would still have priority over Leckey's in the distribution of the fund. Leckey filed a motion to alter or amend the judgment under Bankruptcy Rule 9023, which the Bankruptcy Court denied. Leckey also appealed to the District Court. The District Court affirmed the Bankruptcy Court's order. The District Court, noting that it was "merely augmenting" the Bankruptcy Court's decision by concluding that in addition to failing to meet the two criteria cited by the Bankruptcy Court, Leckey could not show that equitable considerations weighed in his favor. Leckey appeals.[5]

---

[4] Leckey originally included his work defending the fraudulent conveyance on behalf of Estate Partners, but he no longer relies on his work in those proceedings.

[5] Leckey also filed a motion to quash Appellee's Appendix to Briefs. He argues that Paul included briefs and transcripts from oral arguments (and excerpts thereof) that were not necessary to show that an issue was raised or an argument was made. See LAR 30.3. Paul responds that he filed an appendix to include those documents that he designated as additional material to be included in Leckey's appendix, which Leckey inappropriately refused to include. See Fed. R. App. P. 30(b)(1). Upon considering these arguments, as well as Leckey's additional argument in reply and contents of the appendices, we deny Leckey's motion to quash. We also deny Leckey's

4

The District Court had jurisdiction to review the Bankruptcy Court's orders pursuant to 28 U.S.C. § 158(a), and we have jurisdiction to review the District Court's order under 28 U.S.C. §§ 158(d), 1291. Our review of the District Court's determination is plenary. See Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 353 (3d Cir. 2002). We review the Bankruptcy Court's determinations as the District Court would. See id. We do not set aside factual findings of the Bankruptcy Court unless they are clearly erroneous.[6] See id. We exercise plenary review over an order resolving cross-motions for summary judgment. See Cantor v. Perelman, 414 F.3d 430, 435 n.2 (3d Cir. 2005). We ask "(a) is there no genuine issue of material fact, and (b) is one party entitled to judgment as a matter of law?" Id.

The Bankruptcy Court properly granted summary judgment in favor of Paul. The District Court had imposed a constructive trust in favor of Paul over the W/B Note in response to our earlier ruling. The W/B Note was liquidated by W/B Associates' plan of reorganization, forming the fund at issue. As the Bankruptcy Court noted, it is well-

---

motion for review of the Clerk's order construing a letter submitted by Paul as a motion by him for leave to file a supplemental appendix and granting that motion.

[6] Leckey at once concedes that his appeal raises only questions of law because the material facts are undisputed (Appellant's Brief at 7) but disputes whether Paul's claim has already been paid in full (Appellant's Brief at 2, 25-27). To the extent that he bases his argument on his unwarranted recharacterization of Paul's claim of a constructive trust, we reject it. To the extent that Leckey alludes to the possibility of another payment that he did not consider until the case was before the District Court on appeal, we will not consider his argument because it was not presented to the Bankruptcy Court in the first instance.

5

established that a constructive trust runs with the proceeds of a trust. See, e.g., Nat'l

Bank v. Ins. Co., 104 U.S. 54, 68 (1881). Therefore, Paul established his claim to the

fund to the extent necessary to satisfy the terms of the constructive trust.

The Bankruptcy Court also properly denied summary judgment in favor of

Leckey. Under Pennsylvania law, five criteria must be satisfied before a charging lien is

recognized and applied:

> [I]t must appear (1) that there is a fund in court or otherwise applicable
> for distribution on equitable principles, (2) that the services of the attorney
> operated substantially or primarily to secure the fund out of which he seeks
> to be paid, (3) that it was agreed that counsel look to the fund rather than
> the client for his compensation, (4) that the lien claimed is limited to costs,
> fees or other disbursements incurred in the litigation by which the fund was
> raised and (5) that there are equitable considerations which necessitate the
> recognition and application of the charging lien.

Recht v. Clairton Urban Redevelopment Authority, 168 A.2d 134, 138-39 (Pa. 1961).

As to the second criterion, it is unclear whether Leckey's services operated

substantially or primarily to secure the fund out of which he seeks to be paid. Leckey was

not directly involved in creating the fund from the liquidation of the W/B Note pursuant

to the W/B Associate's plan of reorganization. He was not counsel for the debtor in the

bankruptcy suit. See In re Clate, 69 B.R. 506, 510 (Bankr. W.D. Pa. 1987) (surveying

cases, noting that attorneys awarded charging liens had attorney-client relationships with

the fund recipients, and rejecting the claim of the appointed trustee in bankruptcy who

provided legal services to the debtor in selling the debtor's residence). Leckey argues,

however, that he is entitled to a charging lien because he created or secured Estate

6

Partners' claim to the fund through his role in earlier proceedings.

Despite the Bankruptcy Court's reliance on it, Recht is not particularly persuasive authority for or against Leckey's claim based on the second criterion. In denying a charging lien in Recht, the Pennsylvania Supreme Court rejected a claim based on services rendered in an earlier proceeding. See 168 A.2d at 139. The Recht court looked only to the litigation that directly produced the fund at issue. See id. However, Recht does not necessarily stand for the sweeping proposition that services in an earlier proceeding cannot give rise to a charging lien against a fund created in a later proceeding. The initiation of the later proceeding in Recht had extinguished by operation of law any award in the earlier proceeding. See 168 A.2d at 139. Here, unlike Recht, there was no de novo award of money. Leckey's actions in earlier proceedings preserved Estate Partners' claim against W/B Associates in the bankruptcy liquidation. Nonetheless, the circumstances of Leckey's claim is atypical, in part because his claim is based on his action in multiple proceedings.

Leckey relies in part on the use of the plural "proceedings" in Greek Catholic Union of Russian Brotherhoods v. Russin, 17 A.2d 402, 403 (Pa. 1941), to support his claim that "it may take the services of an attorney in more than one proceeding to secure a fund for his client." (Appellant's Reply Brief at 1.) However, in the Greek Catholic Union case, the Pennsylvania Supreme Court used the term proceedings to distinguish between cases in which charging liens are imposed and cases

7

in which general or retaining liens are imposed:

> As to the charging lien, it has always been recognized that it extends only to services rendered in the proceedings creating the fund and not to services rendered in other cases: Martin v. Throckmorton, 15 Pa. Superior Ct. 632; Aber's Petition, 18 Pa. Superior Ct. 110. The general or retaining lien, however, extends not only to costs and fees in the particular cause in which the property came into the attorney's possession, but as well to costs and fees due the attorney from other professional business . . . .

Greek Catholic Union of Russian Brotherhoods, 17 A.2d at 403. In context, the term "proceedings" does not necessarily lend itself to Leckey's interpretation. Furthermore, at least one of the cases cited above by the Pennsylvania Supreme Court does not support Leckey's proposition. In Aber's Petition, the Pennsylvania Superior Court held that any equitable lien in favor of attorneys in that case was a claim for the services rendered to recover a fund in one suit, not a claim for services rendered in other cases. See 18 Pa. Super. 110, 114 (Pa. Super. Ct. 1901). However, the other case cited, Martin v. Throckmorton, arguably supports the imposition of a charging lien from work in multiple proceedings, at least subject to a limitation. The Pennsylvania Superior Court set the following limitation that "he who as an attorney at law has in any proceeding collected money for his client cannot set off against his client's claim for that money a claim due him for services as counsel in any proceeding other than that out of which the money came, unless the client has expressly agreed that the fund shall be so appropriated." Martin v. Throckmorton, 15 Pa. Super. 632, 634-35 (Pa. Super. Ct. 1901). However, putting aside the question of an express agreement for a moment, unlike Martin, this case

8

is atypical in another way – a bankruptcy proceeding has been interposed between a party and its right to a fund. Estate Partners' claim to the fund in the Bankruptcy Court is based on its claim to the W/B Note, and those claims remain conceptually distinct.

Furthermore, when a charging lien has been imposed against a fund awarded in a later proceeding because of work rendered in an earlier proceeding, the proceedings have been more related. In Turtle Creek Bank & Trust Co. v. Murdock (one of many cases cited in Recht), Murdock hired counsel who helped him establish his claim to title over a parcel of real property. See 28 A.2d 320, 321 (Pa. Super. Ct. 1942). Once Murdock held title, a bank revived, then executed on, a judgment, causing the property to be sold at sheriff's sale. See id. Murdock's counsel in the title dispute wished to impose a charging lien over the proceeds of the sheriff's sale. See id. The Pennsylvania Superior Court held that counsel was entitled to a charging lien because without counsel's efforts, Murdock would not have had legal title and there would not have been a sheriff's sale or fund for distribution. See id. at 322 (holding also that "the money in the hands of the sheriff for distributions was . . . created, or at least made available, by the efforts of [counsel]").

Despite reservations about whether Leckey's services operated substantially or primarily to secure the fund, we will assume arguendo that they did. Nonetheless, we still hold that Leckey was not entitled to summary judgment because he did not establish the third criterion of the Recht test – that he had an agreement to look to the fund rather

9

the client for his compensation. As the Bankruptcy Court concluded, there certainly was no agreement for Leckey to expect payment from the W/B fund established through the liquidation proceedings. Moreover, even if we were to define the fund more expansively as any recovery on the W/B Note, Leckey could not establish that he had an agreement to look to it for compensation.

As evidence of an agreement, Leckey presented a letter he sent to Estate Partners through its general partner, the builder of Gladstone's Florida home, on January 7, 1994. (App. at 143a - 144a.) In the letter, he set forth his understanding of the payment arrangement between him and Estate Partners:

> This letter is to confirm my telephone conversations in December, 1993, with Stuart S. Mermelstein, Esquire,[7] concerning the basis upon which I have agreed that I will continue to represent Estate Partners, Ltd. in the Attachment Execution . . . the Property Claim filed with the Sheriff of Allegheny County by Theodore Paul . . . the Fraudulent Conveyance Action filed by Theodore Paul . . . and . . . the Declaratory Judgment Action filed by W/B Associates . . . .
>
> For the services which I have performed beginning in July, 1992, through November, 1993, with respect to the Attachment Execution . . . and levying upon the Note of W/B Associates . . . and my services to conclusion of this matter, as well as my services . . . in the Fraudulent Conveyance Action instituted by Theodore Paul . . . and my services . . . in the Declaratory Judgment Action filed by W/B Associates . . ., I shall be compensated from any amounts paid on account of the Note from W/B Associates . . . dated November 30, 1982, and/or the Guarantees of this Note, including those purchased by Bomar Builders, Inc. at the Sheriff's Sale conducted by the Sheriff of Allegheny County on April 2, 1992, at which I represented Bomar

---

[7] Stuart Mermelstein was counsel for the builder.

10

Builders, Inc. at the rate of $250.00 per hour or forty (40%) percent of all such amounts paid, whichever is less.

* * *

If the foregoing reflects our understanding, please execute the enclosed copy of this letter where indicated and return the same to me.

(Id.)

The copy of the letter in the record is insufficient to show the existence of an agreement to satisfy the third criterion of Recht. Although Leckey seeks to underscore the portion of the letter that includes the phrase "shall be compensated from any amounts paid on account of the Note," we find most relevant the conditional phrase beginning "[i]f the foregoing reflects our undersanding." As Leckey does not dispute, the letter was never executed by the person to whom it was sent. (App. at 144a & 217a, ¶ 3.)

Leckey also submitted an affidavit from Stuart Mermelstein in which Mermelstein averred that, upon receipt of the letter on the builder's behalf, he had "confirmed that his summary of the contingent fee arrangement was accurate" and that "it was made clear to Leckey that this was the arrangement under which he had been retained and continuing to perform services as the attorney for Estate Partners." (App. at 217a-218a.) However, because no one had signed the letter, Leckey's own doubts as to whether he had an agreement with Estate Partners continued at least until 1996, as evidenced by a later letter from another Estate Partners general partner. (App. at 222a.) Leckey submitted evidence that in August 1996, a different general partner consented to

11

prospective representation based on the terms set forth in the January 7, 1994 letter. (App. at 222a.) The 1996 agreement cannot be used to show a payment agreement for services rendered earlier.

Furthermore, in state court proceedings, Leckey himself contested the validity of the earlier purported agreement by arguing that it had been procured by fraud. Describing as a proposal the letter that he now contends was an agreement, he alleged that after learning about a stock sale by Marianne Gladstone on January 4, 1995, he had "advised Estate Partners that the proposal dated January 7, 1994, had been obtained by fraud and [Leckey] would not further represent Estate Partners pursuant to this proposal, and that it would be necessary for Estate Partners and [Leckey] to reach a new fee agreement, without which [Leckey's] entire representation of Estate Partnes since July 2, 1992, and thereafter, would be on a quantum meruit basis." (App. at 319a, ¶¶ 31-32.)

Leckey seeks to downplay the significance of his allegations because he and Estate Partners executed a settlement agreement in the state-court suit. However, the settlement agreement on its terms did not resolve the question of the validity of the proposal/purported agreement. As he and Estate Partners agreed, "[n]either execution of [the settlement] Agreement nor performance of its terms and conditions shall be considered by any party or by any other persons as admission of liability by any of the parties hereto." (App. at 371a.) Although Leckey is correct that he cannot raise his claims again because a settlement operates like a judgment in favor of a defendant,

12

see Sustrik v. Jones & Laughlin Steel Corp., 197 A.2d 44, 46 (Pa. 1964); Barson's & Overbrook, Inc. v. Arce Sales Corp., 324 A.2d 467, 468 (Pa. Super. Ct. 1974), he does not show that we cannot consider the allegations as bearing on the question of the existence of a valid agreement. Furthermore, even if we agreed with him that the settlement "had the effect of an adjudication that Leckey's Representation Letter was not obtained by fraud," (App. Brief at 20), we would still be left with his characterization of the letter in that suit as a proposal instead of an agreement. Leckey's characterization of the letter as a proposal, alone and in combination with other evidence in the record, raises doubts as to the existence of an agreement and his satisfaction of the third criterion in Recht. Accordingly, the Bankruptcy Court properly denied summary judgment on his claim of a charging lien.[8]

---

[8] In the Bankruptcy Court, in relation to his charging lien claim, Leckey argued that he should be paid before Paul, citing East & West Coast Service Corp. v. Paphagis, 25 A.2d 339 (Pa. 1942). (Leckey's Brief in Support of Summary Judgment at 23.) To the extent that he separates his claim under the principles of East & West Coast Service Corp. from his charging lien claim and presents it for the first time on appeal, we will not consider it. However, to the extent that Leckey raises an issue of entitlement to payment that the Bankruptcy Court had an opportunity to pass on, we consider his claim. Nonetheless, we conclude that East & West Coast Service Corp. and Chambers v. Chambers, 176 A.2d 673 (1962), (which Leckey cites for the same principle) are inapplicable. In East & West Coast Service Corp., an appeal from an order imposing a constructive trust, the Pennsylvania Supreme Court defined the limits of a constructive trust over the profits of a concession to exclude money spent on maintaining the concession. See 25 A.2d at 341. In Chambers, a constructive trust imposed over a property interest was made subject to a reimbursement of the constructive trustee for expenditures to maintain and improve the property. See 176 A.2d at 677. Unlike the Pennsylvania Supreme Court in the cases cited by Leckey, we are not now considering whether and to what extent a constructive trust should be imposed in favor of Paul (as we

In sum, because the Bankruptcy Court properly denied summary judgment in favor of Leckey and properly granted summary judgment in favor of Paul, the District Court's order will be affirmed.[9]

---

and the District Court have previously considered).  Furthermore, unlike the parties seeking to limit the constructive trusts in those cases, Leckey is not the constructive trustee.

[9] Contrary to Leckey's assertions, the District Court, characterizing the Bankruptcy Court's decision as "well-reasoned" and "merely augmenting" it with additional analysis, did not make factual findings beyond its authority.  In re Cohn, 54 F.3d 1108 (3d Cir. 1995) is distinguishable.